MINNIE L. SCHULTZ et al. vs. CITIZENS' MUTUAL LIFE INS. Co.

Argued Nov. 27, 1894. Affirmed Dec. 7, 1894.

No. 9114.

The words "legal representatives" construed in the context to mean "next of kin."

The words "legal representatives" in a life insurance policy construed as meaning heirs or next of kin, and not executors or administrators.

Articles of Association construed as to assessments upon members.

Held, that the articles of association of the defendant (a corporation organized under Laws 1885, ch. 184) authorize mortuary assessments on the policy holders only upon death losses that have already actually occurred.

Appeal by defendant, the Citizens Mutual Life Insurance Company, from an order of the District Court of Hennepin County, Seagrave Smith, J., made February 27, 1894, denying its motion for a new trial.

The defendant was incorporated under Laws 1885, ch. 184, and insured the life of August C. Schultz of Woonsocket, S. Dak. November 24, 1886, in the sum of $2,000 "payable to and for the sole use of his legal representatives." The policy provides that only four mortuary assessments shall be made each year and not to exceed twelve deaths can be assessed for in the four calls. The articles of incor-

poration did not provide for such fixed periodical assessments. They provided that upon every death loss, an assessment may be made upon the policy holders under such regulations as shall be prescribed by the bylaws. Seventy five per cent of each collection shall be used in paying death claims, the remainder shall constitute a reserve fund held in trust for policy holders. If the mortuary assessment be insufficient to pay the amount named in the policy the reserve may be drawn upon for the deficit. The bylaws provide that nonpayment of a mortuary assessment within twenty five days after notice thereof shall cause a forfeiture of the policy, but the policy contains no reference to the bylaws.

August C. Schultz died intestate July 15, 1892, at Los Angeles Cal., leaving Minnie L. Schultz his widow and three infant children. his heirs and next of kin. Harvey E. Hall was appointed guardian ad litem for the infants and they and the widow brought this action against the company to recover the amount of the insurance. The defendant answered that only the administrator of the estate of the insured could bring the action, that the plaintiffs were not entitled to sue for the money, that one of the four quarterly assessments was made March 1, 1892, and became due and payable prior to April 1, 1892, that deceased was assessed $7.31, and was duly notified, but failed to pay the assessment until April 13, 1892, when it was refused and returned to him and he thereby became, and ever since has stood, suspended and that defendant was thereby released from all liability under the policy and his interest in the company forfeited. The issues were tried January 5, 1894. Findings were made and judgment ordered for plaintiffs for $2,000 and interest. Defendant moved for a new trial and being denied appeals.

*Haynes & Chase*, for appellant.

Plaintiff failed to adduce any evidence that the term "legal representatives" as employed in the policy was intended to include. the heirs of the deceased. The articles of incorporation provide that the insurance shall be paid to the party or parties designated in the policy. These words must be construed to mean his executors or administrators. *Wason* v. *Colburn*, 99 Mass. 342; Cooke, Life Ins. pp. 108, 109.

In *Loos* v. *John Hancock Mut. Life Ins. Co.*, 41 Mo. 538, and in *Griswold* v. *Sawyer*, 125 N. Y. 411, a different rule was laid down, but it appeared from the context that the primary object was to provide for the family of the deceased.

The defense of forfeiture was established by ample proof. The bylaws of a mutual benefit insurance company constitute a part of the contract of insurance, whether contained or not in the policy or referred to in it. Niblack, Mut. Ben. Soc. §§ 117, 166; *Miller* v. *Hillsborough Mut. F. As. Ass'n*, 42 N. J. Eq. 462; *Supreme Commandery Knights Golden Rule* v. *Ainsworth*, 71 Ala. 436; *Railway P. & F. C. Mut. Aid & Ben. Ass'n* v. *Robinson*, 147 Ill. 138; *Backdahl* v. *Grand Lodge A. O. U. W.*, 46 Minn. 61.

The contract is mutual and imperative that he shall make his payment promptly on the day agreed or stand suspended upon the books of the company. Any member has a right to insist that this agreement shall be enforced. Even physical disability is no excuse for nonpayment. *Klein* v. *Insurance Company*, 104 U. S. 88; *Yoe* v. *Benjamin C. Howard Mut. Ben. Ass'n*, 63 Md. 93; *New York Life Ins. Co.* v. *Statham*, 93 U. S. 24; *Rood* v. *Railway P. & F. C. Mut. Ben. Ass'n*, 31 Fed. Rep. 62.

One of the points relied upon at the trial was that the defendant had failed to show the legal levy of an assessment for any particular death or deaths, and hence could not declare a default. This is wholly without merit. Assessments may be called and collected in anticipation of death losses where the contract of membership so provides. *McGowan* v. *Supreme Council Cath. Mut. Ben. Ass'n*, 76 Hun, 534; *Smith* v. *Bown*, 75 Hun, 231.

*C. R. St. John* and *Fred W. Reed*, for respondents.

This action was brought in the name of the proper parties. If the contention of the defendant is right, Schultz insured his life for the personal benefit of his executors or administrators alone, and for six years continued to pay money quarterly for the benefit of some one, he did not know who, for neither his wife nor any member of his family would necessarily be his executor or administrator. The term "legal representatives" as used in this policy means the plaintiffs, the wife and children of the deceased. While it is true that these words ordinarily mean executors or ad-

ministrators, yet whenever it is apparent from the context that that was not the intention courts construe them as excluding executors and administrators. *Hammond* v. *Mason & Hamlin Organ Co.*, 92 U. S. 724; *National Bank* v. *Trimble*, 40 Ohio St. 629; *Greenwood* v. *Holbrook*, 111 N. Y. 465; *Lee* v. *Dill*, 39 Barb. 516; *Bridge* v. *Abbott*, 3 Bro. C. C. 224; *Brokaw* v. *Hudson's Ex'rs*, 27 N. J. Eq. 135; *Farnam* v. *Farnam*, 53 Conn. 261; *Warnecke* v. *Lembca*, 71 Ill. 91; *New York Mut. Life Ins. Co.* v. *Armstrong*, 117 U. S. 591; *Ewing* v. *Warner*, 47 Minn. 446; *Walter* v. *Henzel*, 42 Minn. 204.

Besides, the application supports this position. In answer to the question in the application as to whom he desired the moneys paid to in case of his death, appears the answer "legal heirs," and then "Q. Residence? A. Woonsocket, State of South Dakota. Q. Relationship? A. Wife, if living." Where there is anything to show such intent, "legal representatives" in an insurance policy mean the widow and children. *Griswold* v. *Sawyer*, 125 N. Y. 411; *Loos* v. *John Hancock Mut. Life Ins. Co.*, 41 Mo. 538.

There was no forfeiture because there was none provided for in the policy. The bylaws were no part of the contract. The policy of insurance in this case contains the terms of the contract and the grounds upon which it may be forfeited. *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 191; *American Life Ins. Co.* v. *Day*, 39 N. J. Law, 89.

There was no assessment shown for which the insured became liable. The articles of incorporation say the company is organized for the transaction of business on the assessment plan, and Article eight provides, "Upon every death loss an assessment may be made of which assessment due notice shall be given. The policy provides for mortuary assessments, only on death losses. The policy provides that they shall be called for only four times a year, and "not to exceed twelve deaths can be assessed for in the four calls," but this by no means authorizes the company to call for payment of three death assessments or any other number on April 1, 1892, without showing that there were three death losses to be paid. Defendant admits that this pretended mortuary call was for anticipated death losses. Therefore it was not valid.

The answer says that defendant had collected from the deceased up to the time of his death, "the full maximum quarterly mortuary assessments" as provided by the policy "in anticipation of death losses" and that he had paid what was called for. The company shows no valid assessment and deceased could not be in default for nonpayment. *Insurance Company* v. *Harvey*, 45 N. H. 292; *Bates* v. *Detroit Mut. Ben. Ass'n*, 51 Mich. 587; *Underwood* v. *Iowa Legion of Honor*, 66 Ia. 134; *Agnew* v. *Ancient Order U. W.* 17 Mo. App. 254.

If Schultz had paid more than he ought before, that would not justify a forfeiture for an illegal demand now. His contract was to pay assessments for actual deaths. A new contract cannot be made by custom. *Smith* v. *Bown*, 75 Hun, 231; *Paine* v. *Smith*, 33 Minn. 495.

MITCHELL, J. The plaintiffs are the widow and children (heirs at law) of August C. Schultz, who died in July, 1892. The defendant is a corporation organized under Laws 1885, ch. 184, "for the transaction of life insurance business on the assessment plan." This is an action to recover on a policy for $2,000 on the life of August C. Schultz, issued in November, 1886.

1. The first question is, to whom is the policy payable,—to the heirs or to the personal representatives of the insured? By the terms of the policy, the application for the insurance is made a part of it. In this application, in response to the following interrogatories, the insured gave the following answers:

"Name in full of the person or persons to whom you desire the money paid in case of death?" Answer, "Legal heirs."

"Relationship?" Answer, "Wife, if living."

"Has the above person any interest in the life of the person insured?" Answer, "Yes."

Then at the end of the application is found the following: "Person for whose benefit policy is taken?" "Legal representatives."

The policy itself provides "that the amount shall be payable to and for the sole use of his legal representatives."

Although perhaps not entitled to great weight, in view of the nature of the corporation as expressed in its articles of association, yet it is worthy of mention that its by-laws state that "the

object of this company shall be to insure its members, and to secure pecuniary benefits to widows, orphans, families, or heirs of deceased members."

Notwithstanding the loose, inaccurate, and apparently contradictory use of terms in the application and policy, we are satisfied that the heirs (including the widow) of the deceased are the beneficiaries of the policy, and that the words "legal representatives," as therein used, must be construed as meaning heirs or next of kin, and not executors or administrators.    It is always permissible to construe these words in that way, especially in wills and policies of life insurance, wherever it is apparent from the context or subject-matter that they were used in that sense.    They will be construed in that way more readily in policies of life insurance than in almost any other kind of instrument for the reason that such insurance is very commonly intended as a provision for the family of the insured.    A controlling fact in this case is that, whenever the words "personal representatives" are used, they have reference, not to the persons entitled merely to receive the money, but to those for whose "benefit" or "use" the policy is taken or the money is payable.  It is not to be supposed that the insured intended his executors or administrators personally to be the beneficiaries of the policy.

2. The only other question is whether there had been a forfeiture of the policy during the lifetime of the insured, by reason of the nonpayment of "a mortuary assessment" claimed to have become due and payable April 1, 1892.    The amount of this assessment ($7.31) was on April 6th transmitted by mail by the insured to the defendant, and received by it April 13th, but was returned on the ground that the payment was too late, and that the policy was already forfeited.    The policy itself contains no provision for a forfeiture for nonpayment of such assessments, and contains no reference to the by-laws of the association; but in the application it is stipulated "that the insurance is applied for and will be accepted subject to the conditions contained in the policy which may be issued on this application, the provisions of the articles of incorporation, and the by-laws of the company"; also, that the insured "will always promptly respond to all demands made upon him according to and by virtue of the by-laws and

articles of incorporation of the company." The defendant contends that by reason of these references, as well as by virtue of the membership of the insured in the company, the by-laws became a part of the contract of insurance, and that by their provisions the policy was forfeited by reason of the nonpayment of the mortuary assessment on April 1st. Much of the briefs of counsel is devoted to the discussion of these two questions, upon the latter of which they discuss at some length the construction of the various provisions of the by-laws, which are quite long, and the meaning of which is not always entirely clear; but we find no occasion to consider either of these questions, for the reason that we are satisfied that there was no valid mortuary assessment.

Article 8 of the articles of association provides that "upon every death loss an assessment may be made on the policy holders in the company, in such amounts, and under such regulations, as shall be prescribed in the by-laws."

In view of the further provision that seventy five per cent. collected on such assessment shall be held for the payment of death losses, and the other twenty five per cent. shall go into the reserve fund to supplement any deficiency that may arise in the payment of death losses, it must be conceded that in making an assessment the company is not limited to the amount necessary to pay the death losses that have already occurred; yet it is perfectly clear that assessments can only be made for and upon death losses that have previously occurred, and not merely on the basis of losses which may be anticipated in the future.

The provisions of the by-laws are: "Each policy holder shall pay subsequent quarterly mortuary premiums on each $1,000 of insurance carried in accordance with the rate at the actual age attained in the following table [table No. 2]. Mortuary premiums * * * shall be due and payable ninety (90) days from date of policy, and every ninety (90) days thereafter."

In short, the scheme of mortuary assessments (called "premiums") provided for in the by-laws is a fixed and absolute assessment every ninety days, the amount of which is determined solely by the age of the insured and the amount of his policy, without any regard to the number of death losses that have occurred, or whether any at all have actually occurred.

The evidence shows conclusively that the mortuary assessment, for nonpayment of which a forfeiture is claimed, was made solely on this basis. However much more businesslike it may be to have the money on hand to pay losses before they occur, yet it is perfectly clear that no such system of assessments as adopted in this case is authorized by the articles of association. That the association had for years been demanding payment of such assessments, and that the insured had paid them, is not material. The fact that one party has been making illegal demands on another, and that the latter has heretofore complied with them, imposes no legal duty upon him to continue to comply with them.

Therefore, whether the reasons given by the trial judge for his decision were right or wrong, he was correct in holding that the policy was not forfeited.

In closing, we think we may be excused in digressing to say that, while we do not mean to be understood as at all characterizing the defendant association, of which we know nothing except from the record, yet we have no patience with the prolix, obscure, and involved provisions and conditions which so many so-called co-operative, life, endowment, casualty insurance, and other similar associations usually incorporate into their policies and by-laws. The patrons of such associations are largely composed of people of limited means, neither astute lawyers nor experienced business men, whose object is to make moderate provision for their families in case of death. Whether intended to have such result or not, such provisions and conditions are calculated to mislead the insured, and entrap him into some act of omission or commission that will work a forfeiture of his insurance. It would certainly be a great boon to the public if there could be devised legislative forms of contracts and rules for all such associations, couched in clear, concise, and intelligible language, and to or from which the associations could neither add nor subtract.

Order affirmed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 61 N. W. 331.)