[S. F. No. 3107.    Department Two.—January 20, 1905.]

## REBECCA D. BENJAMIN, Respondent, v. MUTUAL RESERVE FUND LIFE ASSOCIATION, Appellant.

LIFE INSURANCE—CO-OPERATIVE ASSOCIATION—ASSESSMENTS—INVALID CLASSIFICATION OF MEMBERS.—The essential principle upon which co-operative associations on the assessment plan are based is, that there will be a constant invigoration of the association by the accession of new members, that it shall be a going concern for the advantage of all, and that every member will be given the benefit of the average mortality of the entire membership in force at the last death prior to the assessment; and a classification of earlier members into a fifteen-year class, solely for the purpose of levying an increased rate of assessment for mortality upon them in violation of the contract of insurance, is invalid, as being an inequitable and arbitrary discrimination against that class.

ID.—MAKING UP DEFICIENCY.—Any deficiency existing by reason of having levied insufficient death rates upon the original members of the association is a deficiency not of such members but of the association itself, and it cannot be made good by arbitrarily dividing them into a class and levying an increased rate upon them to make up such deficiency.

ID.—MEMBER NOT LIABLE FOR VOID ASSESSMENTS.—Assessments levied in violation of the contract of insurance are void, and create no liability upon a member for payment thereof, and cannot affect his rights. He was not called upon to determine the proper amount to pay or tender in such case, nor furnish the association with his reasons for lapsing in payment of the void assessment, in the absence of any provision in the contract, constitution, or by-laws. requiring such reasons to be stated.

ID.—PAYMENT OF SOME VOID ASSESSMENTS—MEMBER NOT ESTOPPED.—
The payment of some illegal and void assessments does not estop
the member from questioning the validity of further unpaid assess-
ments which are void. Such payments were made under a moral
compulsion, a threat implied, that if he did not pay his certificate
would be forfeited, and the association cannot take advantage of
its wrong in illegally collecting them; nor does the doctrine of
estoppel have any application to the payment of prior illegal de-
mands which impose no legal obligation to continue to pay them.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. William R. Dainger-
field, Judge.

The facts are stated in the opinion of the court.

I. B. L. Brandt, and L. A. Redman, for Appellant.

The policy was avoided for non-payment of the assessments
*co instanti* when the time allowed for payment expired.
(*Carey* v. *German-American Ins. Co.,* 84 Wis. 80;[1] *Freckman*
v. *Supreme Council Royal Arcanum,* 96 Wis. 133, 134; *Rail-
way Conductors' Assn.* v. *Leonard,* 82 Ill. App. 214; *Hansen*
v. *Supreme Lodge K. of H.,* 140 Ill. 306; 40 Ill. App. 219.)
Subscription of the member to the constitution and by-laws
charged him with notice of their contents. (*Mutual Fire Ins.
Co.* v. *Miller Lodge,* 58 Md. 463.) The member had options in
his lifetime which he could avail himself of. (2 Bacon on
Benefit Societies (Life Ins. Soc.) 376.) Not having availed
himself of those options he abandoned the insurance. The
plaintiff stands in no better position than her husband; and by
reason of his payment of former assessments of the same
character, she was estopped from setting up that mortuary
call No. 98 was invalid. (*Haydel* v. *Mutual Reserve Fund
Life Assn.,* 98 Fed. 200; *Morgut* v. *United Ben. Assn.,* 148
Pa. St. 185; *Methvin* v. *Fidelity etc. Ins. Co.,* 129 Cal. 251;
1 Joyce on Insurance, sec. 35; *Smith* v. *Covenant etc. Assn.,*
16 Tex. Civ. App. 593; Bigelow on Estoppel, 568.) Classifi-
cation imposing different burdens is not invalid or unreason-
able. (*People* v. *Life and Reserve Assn.,* 150 N. Y. 94; *Smith*
v. *Covenant etc. Assn.,* 16 Tex. Civ. App 593; Niblack on
Mutual Benefit Societies, sec. 254; *Barbot* v. *Mutual Reserve
Fund Life Ins. Assn.,* 100 Ga. 681; *Seymour* v. *Mutual Re-*

[1] 36 Am. St. Rep. 907.

*serve Fund Life Ins. Assn.,* 14 Misc. Rep. (N. Y.) 151; *Gaut* v. *Mutual Reserve Life Assn.,* 121 Fed. 403.

Edgar D. Peixotto, and J. T. Houx, for Respondent.

The assessment was void as not being of the entire membership, as provided in the contract. (*Mutual Ins. Co.* v. *Heywards,* 3 Gray, 208.) To work a forfeiture the precise condition of the contract must be strictly followed without variation. (Bacon on Benefit Societies, secs. 377 et seq., p. 563, note; *Miles* v. *Mutual Relief Fund Assn.,* 108 Wis. 421; *Randall* v. *Scott,* 110 Cal. 595; *Bates* v. *Detroit Mut. Ben. Assn.,* 51 Mich. 587; *Underwood* v. *Iowa Legion of Honor,* 66 Iowa, 134.) The fifteen-year classification of members for purposes of assessment was invalid and void. (*Ebert* v. *Mutual Reserve Fund Life Assn.,* 81 Minn. 116; *Strauss* v. *Mutual Reserve Fund Life Assn.,* 126 N. C. 971.[1]) A member is not required to pay invalid assessments. They cannot affect his rights. (*Lee* v. *Mutual Reserve Fund Assn.,* 97 Va. 160.) The assessment being void, the rate was not to be apportioned, and no tender of any part was required. (*Hogan* v. *Pacific etc. League,* 99 Cal. 248; *Schultz* v. *Citizens' etc. Ins. Co.,* 59 Minn. 315; *Farmers' etc. Ins. Co.* v. *Knight,* 162 Ill. 470; *Lee* v. *Mutual etc. Assn.,* 97 Va. 165.) Amendments to by-laws cannot change the essential rights of the parties as fixed by contract. (*Weiler* v. *Equitable Aid Soc.,* 92 Hun, 277; 36 N. Y. Supp. 734; *Thibert* v. *Supreme Lodge,* 78 Minn. 448;[2] *Annan* v. *Hill Union Brewery Co.,* 59 N. J. Eq. 414; *Knight Templar etc. Life Indemnity Co.* v. *Jarman,* 104 Fed. 638-643; *McNiel* v. *Southern Tier Masonic Relief Assn.,* 40 App. Div. 581; 58 N. Y. Supp. 119; *Morrison* v. *Wisconsin etc. Ins. Co.,* 59 Wis. 162.) There was no estoppel from the payment of past illegal assessments. (*Duggans* v. *Covenant Mutual Life Assn.,* 87 Ill. App. 416; *Schultz* v. *Citizens' M. L. Ins. Co.,* 59 Minn. 308; *Farmers' etc. Ins. Co.* v. *Knight,* 162 Ill. 470.)

LORIGAN, J.—This action was brought by the beneficiary to recover upon a life-insurance policy for five thousand dollars. The defense was that the policy was forfeited for non-payment of assessments. The plaintiff had judgment, and the

[1] 83 Am. St. Rep. 699.          [2] 79 Am. St. Rep. 412.

defendant appeals therefrom, and also from an order denying it a new trial.

The plaintiff transacts the business of life insurance on the co-operative, or assessment, plan. The husband of plaintiff —A. F. Benjamin—in October, 1883, applied for and received a certificate of membership in defendant, together with a policy of insurance upon his life for five thousand dollars, payable to his said wife. In said certificate and policy the defendant agreed as follows: "Whenever the death fund of the association is insufficient to meet the existing claims by death an assessment shall be made upon the *entire membership* in force at the date of the last death, the same *to be apportioned among the members according to the age of each member,* for such a sum as the executive committee may deem sufficient to cover said claims, and the net amount received from such assessment (less twenty-five per cent to be set apart for the reserve fund) shall go into the death fund."

It was also agreed, on the part of the insured, that "This certificate shall be subject to all the provisions and stipulations contained in the constitution and by-laws of the association, with the amendments thereto." The insured also agreed to pay all dues and assessments when due; and it was also provided and agreed further, that, in case of failure to so pay the said sum, the said certificate should become null and void, and all moneys paid thereunder should be forfeited to said association.

At the time of the issuance of the said certificate of membership there was in existence, in full force and effect, a "constitution and by-laws" of said association, in which it was provided that: "On the first days of February, May, August, and November (or at such other periods as the board of directors may determine), an assessment shall be made upon the *entire membership in force* at the date of the last audited death claim prior thereto, for such a sum as the executive committee may deem sufficient to meet the existing claims by death, *the same to be apportioned among the members according to the age of each member,* as per the rates named in the certificate of membership, and the net amount received from such assessment (less twenty-five per cent to be set apart for the reserve fund) shall go into the death fund. . . . . A failure to pay the assessment within thirty days from the

first days of February, May, August, and November (or at such other periods as may be named by the directors) shall work a forfeiture of membership in this association of all rights thereunder." It was further provided in said "constitution and by-laws" that: "The board of directors shall have authority to adopt such other rules and regulations as they may deem for the interest of the association." It was also provided: "This constitution may be revised or amended at any annual meeting, or at a special meeting of the members called for that purpose."

The findings show that the insured paid all dues and assessments up to the date of mortuary call No. 98, June 1, 1898. This call required payment on or before July 1, 1898, but was not paid, and in July the assured was notified that his policy had lapsed. On October 11th of the same year the insured died. It is contended, that it was unnecessary to pay this mortuary call, for the reason that it was excessive, and contrary to the express terms of the policy, or certificate of membership. By a series of resolutions, the association had placed all members who entered prior to 1890—including said Benjamin—in a class by themselves, called the fifteen-year class, and required them to pay according to the attained age of each individual at the date of the assessment. It established, also, other classes, known as ten- and five-year classes, and provided that the members of those classes should be assessed as *of the age of their entry* into the association.

The effect of this was, to compel the members of the fifteen-year class, to which plaintiff's husband belonged, to bear the expense of the insurance of that class, without the aid of those joining after 1890—the result being that Benjamin was compelled to pay $2.67 per thousand, while a member of the ten-year class of the same age as Benjamin was assessed only $2.40 per thousand.

It is contended that this is in violation of the original contract, that the assessments would be apportioned among all the members, according to the age of each member.

The lower court found the above facts to be true, and decided that the mortuary assessment — No. 98 — against Benjamin, being at a greater rate on each one thousand dollars of insurance held by him under his policy, than was assessed upon each one thousand dollars held by other

members of said association of the same age as Benjamin, upon policies issued to them under what is termed the ten-year-policy plan, was unauthorized by the contract between Benjamin and the defendant association, and was disproportionate and discriminating against him, and was invalid and void.

This conclusion of the lower court is undoubtedly correct, unless, as is insisted by appellant, the finding that the mortuary call was disproportionate and discriminating, and was unauthorized and in violation of the contract of insurance, is not justified by the evidence. This contention of appellant is based upon the reports of the superintendent of insurance of the state of New York, where the defendant association is incorporated, and that of the actuary of the association, introduced in evidence, supplemented by the testimony of the latter.

But, as far as the matters contained in such reports are concerned, we do not see that they in any manner disturb the sufficiency of the finding. These reports—particularly that of the actuary—are relative to the *status* of the class of membership holding policies in the fifteen-year class, as regards their relation to past and future assessments for death claims, which it was insisted were properly chargeable to that class on the basis of the mortality experience of the entire membership; and also with regard to the question of sufficiency, or insufficiency, of the proceeds of future calls or assessments, based upon rates at the then assessed age, to meet probable death losses in that class. In these reports, the secretary and actuary assumed that under the law of New York, and under the constitution and by-laws of the association, the association had the right to place its members who had joined prior to 1890 in a class by themselves—the fifteen-year class— and to assess them on a basis different from that applied to members coming into the association in subsequent years, and who were also divided into classes—ten and five years—and having assumed this right the reports proceeded to assign reasons why it would be entirely equitable and proper to assess the members of such fifteen-year class at their attained ages, and to assess members of the other classes at their age of entry, independent of the contract of insurance held by persons of the fifteen-year class, such as Benjamin.

The testimony of the actuary of the association is in the same general line.

When, however, we eliminate from the reports and the testimony of the actuary, all discussion as to methods of insurance and the legitimate system which should prevail in co-operative insurance companies, such as the defendant association, concerning the assessment of its members, and the theories indulged therein as to the right of the association to divide these members into distinct classes, for the purpose of assessments, and examine the facts, it is not difficult to discover the object sought to be attained by the segregation of its members into classes, and the effect upon the fifteen-year class of the resolution requiring members of that class to pay assessments on their attained ages, and not upon the basis of an apportionment of payment of assessments among all the members of the association according to the *ages of the members,* as provided, at least, in the insurance contract between Benjamin and the association.

This fifteen-year class was made up of members of the association who held policies in the association prior to January 1, 1890. Their contract of insurance nowhere authorized the association to segregate them into a class; and this was done arbitrarily, and solely with a view of placing this class by themselves for assessment purposes. From an investigation made on behalf of the association by its actuary, as to the payments by, and the payments to, this fifteen-year class, from the beginning of the association up to 1898, it appeared that the payments to this class of death losses, exceeded the payment by it of premiums in the sum of $852,876; that the remaining membership of the association (the ten- and five-year classes) had an accumulated emergency fund over and above its losses, paid and outstanding, nine times the amount of a single call or assessment; that in the judgment of the actuary, this condition of affairs created an inequality between the fifteen-year class, and the ten- and five-year classes, and that, "in order to provide the revenue necessary for meeting the mortuary costs of this class (fifteen-year) the basis of assessment upon all members of said fifteen-year class should be "at their attained age"—and the association acted accordingly in making its assessments upon that class. It appears, too, from the superintendent's reports, that the rates of assess-

ment to attained age, levied against the policy-holders of this class, were raised by the association "in the endeavor to make this portion of its membership self-sustaining as between premiums and death losses."

And as further evidence that the object of the association in arbitrarily creating a fifteen-year class, and raising the rate of assessment upon its members to attained age, was to make the class self-sustaining, appears from the testimony of the actuary, who stated, in giving his views upon the matter of rates as between the different classes, that:—

"The burden of one class cannot be put upon another class of members, because, the system of this association defendant, in common with that of all other assessment associations, contemplates the payment by each class of its membership of the cost of the insurance of that class, and that any over-payments, by way of accumulations for a so-called reserve or emergency fund, made for the purpose of providing additional security for the performance of the association's contracts with its members, should be held for only a limited period, and at the expiration of that period, applied to the benefit of the class by which such over-payments have been made, in the form of the reduction of future assessments, or to apply on account of future assessments.

"To use, therefore, any part of the contributions made by one class of membership, in payment of a portion of the cost of insurance of another class, would be to deprive the class making the contributions so used, of a portion of the benefits secured by their contracts, and to which they are fairly entitled.

"The effect of casting the burden of the fifteen-year class upon new members entering other classes, would be disastrous to the members of the fifteen-year class, because such a course of action on the part of the association would so discourage the entering of new members, that the entire burden of the fifteen-year class would be sustained by that class alone, and if the amounts of their assessments could not be increased to meet the losses of increasing mortality, there would be no fund with which to pay the death losses, and the result would be the winding up of the business of the association."

We think it is quite apparent, from a consideration of all these matters developed by the reports and the testimony of the

actuary, that the object sought to be accomplished by creating the fifteen-year class and raising the mortuary calls therein to attained ages, was to meet this deficiency to which we have referred, by requiring its payment from the class which it is claimed was responsible for it; and as to future assessments to make this class meet the mortuary calls thereof, and in effect to relieve the other classes, if not entirely, at least to a very appreciable extent, from doing either.

And to a large extent, this action was influenced by the fact that the members of the association of this class had, after joining the association and prior to 1890, been paying assessments as of the age of their entry, or at rates indorsed on their policies, which were lower than the current or attained age rates should have been, and so the association concluded it was only fair and equitable to advance these old members to the current or attained age rates, in order to equalize the burden to be borne by them and the members joining after 1890.

But according to the terms of Benjamin's contract, and by virtue of his relation to the association as a member thereof, it was beyond the power of the association to do any of these things. His contract did not provide that he might be segregated into a class of the association for any purpose; or that there might be any deficiency created by the class into which the association saw pleased to place him, for the payment of which a different rule of assessment than his contract of insurance called for, might be adopted. In fact, as to him, there could not be any deficiency of a class. Any deficiency existing was that of the association, for which he was no more responsible than all the other members of the association of his age. Nor could the association, by arbitrarily putting him in the fifteen-year class, and in creating other classes among the members of the association joining subsequently, deprive him of the benefit which should accrue to him under his contract by the constant addition to the association of new selected lives, and of having the amount necessary to be collected to pay mortuary assessments apportioned among the entire membership according to their actual ages when liability for the assessment accrued.

The essential principle upon which co-operative associations like that of the defendant is based is, that there will

be a constant invigoration of the association by the accession of new members; that it shall be in fact a going concern for the advantage of all, and that every member of the association will be given the benefit of the average mortality of the entire membership in force at the last death prior to an assessment, resulting from this constant addition of new members.

And it was necessarily upon this theory that the earlier members of the association joined it. They anticipated the benefit which would result from a lower average mortality through the constant accession of these new members, and it was this benefit which was secured to Benjamin as one of the earliest members, by the provision in his contract, which called for an assessment ''upon the entire membership in force at the date of the last death claim, the same to be apportioned among the members according to the age of each member.'' He was entitled to this benefit which would accrue from the constant accession of such members. This accession would naturally create a lower average mortality among the entire membership, and consequently a smaller cost would have to be sustained by each member, where the assessment to meet death claims was distributed over the entire membership, equally apportioned as to amount according to the respective ages of the members.

The right to so segregate its members into a fifteen-year class, as was done here, was determined by the supreme courts of Minnesota and North Carolina, adversely to the contention of this appellant. In these cases the suits were brought against this same appellant by members of its association who had been segregated, with Benjamin, into this fifteen-year class, to recover damages for cancellation of their policies for non-payment of a mortuary call similar to the one under consideration here, levied under the same resolutions advancing the members of that class along to attained ages, and assessing them according to rates fixed for such age

In these decisions it was held, that the change in the rate of assessment to advanced age, and which was to apply only to those members who entered prior to 1890, placed in a class by themselves solely for the purpose of such assessment, was an inequitable and arbitrary discrimination against that class, and violative of their contract of insurance.

In the first of these cases—*Ebert* v. *Mutual Reserve Fund Life Assn.*, 81 Minn. 116—the court, discussing this proposition, said: "It is evident that the contract contemplated an unsteady and varying death fund from which to pay death claims, and that the amount of the assessments would vary according to the number of deaths, the growth of the association in membership, and earning capacity of the reserve fund. It is also clear that the law of self-preservation applied, and if, at any time, in order to meet maturing claims, it should become necessary to levy a larger amount than that stipulated in the maximum rate of the table, the power so to do was inherent in the association, and the directors would have authority to pass suitable rules and regulations for that purpose. But it is equally clear that neither by the contract of insurance, in contemplation of the laws of New York, the constitution and by-laws, nor from the natural inherent power of the association, based upon the doctrine of the general good, does there exist authority to arbitrarily discriminate in favor of one class of members and against another class. . . . An attempt is made to justify the action of the directors upon the ground that the old members were originally taken in at the age of entry, and in order to properly adjust their burden with relation to members subsequent to January 1, 1890, the old members should be advanced to the current rates, because that would be their equitable proportion of the current cost of the insurance. The actuary's report and the resolutions mentioned constantly refer to the members who entered prior to January 1, 1890, as 'members of the 15-year class,' as though there was something special about the contracts of those members which would authorize such discrimination. . . . Treating the so-called 15-year members as a class, it was figured out that they were not paying their equitable proportion of the cost of insurance, and so they were advanced as to age. The explanation does not explain. It simply amounts to a confession, that the cost of carrying the insurance of the so-called class, has been estimated by cutting them off from the association as invigorated by the new members. Such a proceeding was in violation of the contract. The old members joined the association upon the theory that it was to be a living institution— as old members dropped out and were paid off, new ones came in, younger in years; thus adding strength, and keeping up the

vitality of the association. The new members entered upon the same basis, and with the same expectation, yet they continue to be assessed as of the age of entry on the 1889 table. There has been shown no reason for drawing an arbitrary line as of January 1, 1890. If the board of directors could advance the age of all members who joined prior to 1890, they can keep setting out classes according to some certain years of entry, and advance its members, also, as to age. And, if the board can advance the members who joined prior to 1890 to the current rates of the 1889 table, they can for the same reason advance them to years ahead of the current age. The board of directors had no authority to levy such an assessment as call No. 96, and the act of the defendant in canceling plaintiff's policy for non-payment of the call made upon such basis was void.''

In the other case—*Strauss* v. *Mutual Reserve Fund Life Assn.*, 126 N. C. 971[1]—it is said: ''We see but one simple point essential to the determination of the case: Can a mutual association, by whatever name it may be called, or whatever may be its purpose, enter into a contract with one of its members, and after receiving large sums upon said contract, alter its essential terms, without the consent of the member, so as practically to destroy its value? We think not. The plaintiff became a member of the defendant association in 1883, and received a policy in the form of a certificate of membership, wherein it was expressly agreed that assessments should 'be made upon the entire membership in force at the date of the last death for such a sum as the executive committee may deem sufficient to cover said claims; the same to be apportioned among the members according to the age of each member as per table indorsed' on said certificate. . . . It seems that by successive resolutions, none of which were amendments to its constitution, the association has placed in a separate class all members who entered prior to 1890, and requires them to pay on the basis of the age attained by each at the date of each assessment, while other members continue to be assessed only as of their age of entry. That the result of such discrimination is injurious to the plaintiff clearly appears from the 16th, 18th, 21st, and 22d findings of fact, as follows: '(16) . . . That since the last resolution of 1898, the plaintiff and all who

[1] 83 Am. St. Rep. 699.

joined said company prior to 1890, and who held policies similar to plaintiff's were assessed at their full attained age, at rates applicable to such age, whereas persons who became members since 1890, and who held policies under what is styled the "Ten Year Class" and the "Five Year Class," are only assessed at their age of entry; and plaintiff is thereby assessed at a higher amount than if the entire membership were assessed at rates of their attained ages.' '(18) That call number 96, made on plaintiff in 1898, and pursuant to the resolutions of said year, is larger in amount than it would have been had all the members of the association been assessed at their full attained ages.' . . . Upon his findings of fact, the court below concluded, as matter of law, that the assessment made in pursuance of the resolutions of 1898 was 'in violation of defendant's constitution and excessive and invalid.' . . . Judgment was rendered accordingly. In it we see no error. All that we decide in the present case is, that the defendant has violated its contract with the plaintiff in a material matter, whereby the plaintiff, having suffered substantial injury, is entitled to substantial damages. We do not decide that a mutual insurance company, or any other kind of insurance company, cannot issue policies of divers kinds and classes, if so authorized by its charter; nor do we decide that a member of a purely mutual association is not bound by all reasonable by-laws and changes lawfully made therein. We are not considering the enforcement of a contract inequitable on its face, but the violation of a lawful contract by attaching thereto, without the consent of the plaintiff, conditions which utterly destroy its value. It is evident that, if the resolution of 1898 is binding upon the plaintiff, he would in any event be eventually forced out of the company by the constantly increasing premiums."

It is, however, insisted by appellant that the case of *Gaut v. Mutual Reserve Fund Life Assn.*, 121 Fed. 403, is opposed to the principles enunciated in the above cases, and furnishes the true rule of law to be applied in the case at bar. But we do not perceive that the Gaut case announces any different principles. In this latter case the dispute was over the right of plaintiff to be assessed during his membership as of his "age of entry" into the association. It was decided that he had no such right. No such question is involved here. It is not con-

tended by this respondent that Benjamin could only be assessed at his age of entry, and not at his attained age. But the contention is, that in apportioning the rates under the resolutions above referred to, the uniformity in apportionment on a basis of the "entire membership" of the association, which his contract provided for, was not observed; that the apportionment was fixed solely with reference to a part of the "entire membership"—the fifteen-year class; that his contract fixed a ratio as between members of the same age, and members of a different age, of the "entire membership" at the date of the last death claim, and required that in any apportionment increasing assessments, such apportionment should be so made, that every member of the same age of the entire membership should be assessed at the same rate; that the apportionment made by the resolution did not adhere to this basis, nor preserve this ratio, or attempt to do so, but the apportionment was confined solely to the membership joining prior to 1890—the fifteen-year class—and hence was a violation of his contract. This proposition was not involved in the Gaut case, but it was the essential point involved in the Ebert and Strauss cases, and there sustained, and we are satisfied that it must be sustained in the case at bar.

Very much is said in the briefs about "Experience Tables of Mortality," the necessity of requiring members "to pay the costs of their own insurance," the difference between the "mortuary calls" made upon the fifteen-year class, and the "premium calls" paid by the ten-year class. As far, however, as Benjamin's contract is concerned, these matters only tend to confuse its proper consideration. Of course an "Experience Table of Mortality" is the basis for figuring rates for life insurance, but this should have been taken into consideration when the association was making its contract of insurance with its members. The difficulties the association found itself in when it undertook to create the fifteen-year class, and assess the members thereof differently from its other members, and in violation of their contracts, arose no doubt, as stated by the superintendent of insurance of New York in his report heretofore adverted to, from "a lack of knowledge of the elementary principles of life insurance displayed by the earlier management" of the association. It is not so certain, however, but even these difficulties

and the necessities they created might have been met by a uniform increase on the rates of the entire membership. But, whether they could or not, they afforded no excuse for violating the provision of the contract of insurance with Benjamin. Nor are we concerned with the distinguishing features between "mortuary" and "premium" calls. Benjamin's contract called for the payment of "assessments" for existing death claims; his contract furnished the ratio upon which an assessment should be based, namely, upon the "entire membership" in force when the liability of the assessment accrued, "to be apportioned among the members according to the age of each member," and to assess him at his attained age, and other members of his same age as of the age of their entry, was a violation of the contract of the association with him, and, for this reason, the assessment designated as "Mortuary Call 98" was void.

It is insisted by the appellant that the evidence shows an abandonment by Benjamin of his contract. This claim seems to be predicated upon the fact that he did not tender—assuming mortuary call 98 to have been illegal—the amount for which he was justly chargeable on that call under his contract, and in failing to make reply to a letter by the association to him requesting him to favor it with his "reasons for lapsing." But the assessment being illegal and void could not affect the plaintiff's rights. He was only required to pay legal assessments. He was not required to obtain the data upon which to correctly figure out what would be a proper amount to pay or tender, or to take chances of his tender being sufficient, if rejected, to preserve his rights. It was the duty of the association to make a lawful assessment, and the only obligation cast upon the plaintiff under his contract was to pay it on due notice, when it was lawfully made. Neither was he required to furnish the association with his reasons for "lapsing." There was no provision in his contract, or the constitution or by-laws of the association requiring him to do so.

It is further claimed that the plaintiff is estopped from asserting the invalidity of "Mortuary Call 98," because her husband had paid similar calls, for several years prior thereto, without complaint, and which calls were subject to the same claim of invalidity as is asserted now. Assuming this to be true, it affords the association no ground for invoking an

estoppel, for at least two reasons. In the first place, the appellant cannot take advantage of its own wrong which would be the result if its claim of estoppel were sustained. All these prior calls, if levied upon the same theory and at the same ratio as that of call 98, were equally illegal with it, and it was wrong for the association to have levied them, or to have insisted upon their payment. They were demanded under an implied threat that, unless paid, his policy would be forfeited, and were paid under a moral compulsion. And, as said in *Duggan* v. *Covenant Mutual Life Assn.,* 87 Ill. App. 416, quoting approvingly from a prior decision of that court: "It certainly cannot be said that Tuttle in paying previous illegal assessment acted fraudulently or that he willfully did anything calculated to mislead others to their injury. When he paid illegal assessments he did so under a moral compulsion and a threat implied, at least, that if he did not pay, his certificate would be forfeited and the provisions made for his wife in case of his death be thereby lost. Can appellant be permitted to take advantage of its own wrong? We say it cannot." In the second place, and independent of the proposition that the association could not take advantage of its own wrong, the rule is general, that the fact of prior illegal demands having been paid imposes no legal obligation to continue to pay them. The doctrine of estoppel has no application to such a case. (*Schultz* v. *Citizens' M. L. Ins. Co.,* 59 Minn. 315; *Farmers' etc. Ins. Co.* v. *Knight,* 162 Ill. 470.) Some other claims are made by appellant in the way of estoppel, which have, in our opinion, no more force than the one just disposed of.

This disposes of all the points made on behalf of appellant for a reversal which we deem merit discussion. We do not pass upon the point as to the notice given to Benjamin by the association of the assessment in question, and which the lower court found was insufficient.

Nor do we pass upon the preliminary objection raised by plaintiff against the consideration by us of the appeal from the order denying the new trial, which she urges upon the ground that there is nothing in the record to show that the motion for a new trial was based upon the insufficiency of the evidence to sustain the findings in the case.

In our opinion the evidence was sufficient to warrant the

finding, that the assessment in question was contrary to the express terms of Benjamin's policy and invalid, and hence the judgment and order appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.