[Civ. No. 4331. Third Appellate District.—April 20, 1931.]

CASSIE COOKSON, Respondent, v. PRUDENCE MUTUAL LIFE INSURANCE ASSOCIATION OF CALIFORNIA, Appellant.

H. W. Zagoren for Appellant.

C. H. McCray for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—The plaintiff had judgment for the sum of $1500 alleged to be due on a certain policy of insurance issued by the defendant upon the life of Leon A. Cookson, now deceased, in which policy the plaintiff was named as the beneficiary. From this judgment the defendant appeals.

The transcript shows that the defendant is a mutual life insurance company, benefits being paid to beneficiaries upon the decease of the person to whom the policy is issued.

That on or about the fourteenth day of December, 1927, the defendant issued to Leon A. Cookson, now deceased, a policy of insurance in the sum of $1500, in which policy the plaintiff was named as the beneficiary. Thereafter, and on or about the twelfth day of February, 1929, said Leon A. Cookson died. Due proof was made of the death of said Leon A. Cookson, and demand made for the payment of the amount specified in the insurance policy. Not being paid, this action was begun.

As a defense to the action the defendant in its answer alleged as follows: "That on or about the 1st day of November, 1928, the said defendant above named duly and regularly, in accordance with the terms of its by-laws in such cases made and provided, levied an assessment of $1.00 per member for the purpose of raising sufficient funds with which to meet death benefits; that the said Leon A. Cookson failed, refused, and neglected to pay such assessment, and by reason thereof, and under and by virtue of the terms of the certificate and policy set forth in plaintiff's complaint on file in the above entitled matter, the said policy duly and regularly lapsed." No demurrer was filed to the answer of the defendant, yet its manifest insufficiency will appear from what is hereinafter set forth.

The policy of insurance issued to the said Leon A. Cookson provided for the payment of semi-annual dues of $2, payable on the first day of June and first day of December of each year. The policy also provided that upon notice of death of a member in good standing, the holder of the policy would be liable to an assessment in the sum of $1 to pay death benefits. It appears that the fund from which benefits were paid was sometimes called the "mortuary fund" and sometimes the "benefit fund". The policy also provided that in the event of the death of the said Leon A. Cookson the company would pay to the plaintiff the sum of $1500, provided, however, that there were at least 1500 members of the association in good standing. In the event that there were not that many members in good standing, the amount payable on the policy would be reduced accordingly.

The record introduced by the appellant shows the following proceedings had in relation to the alleged assessment set forth in its answer, to wit:

"Minutes of Special Meeting of the Board of Directors of Prudence Mutual Life Insurance Association.

"October 20, 1928.

"Upon motion duly made, seconded and carried, the following resolution was unanimously adopted:

"Be it Resolved: That as the Benefit Fund of this Association is below the sum of $1.00 for each one thousand dollars of insurance in force, that being the amount required to be carried on hand, the secretary is instructed to levy an assessment to be called Assessment No. 3, against the members of this Association according to the terms of their respective Certificates to provide money for the payment of future death claims.

"Oscar Wells, a member in good standing whose death was reported September 5, 1928.

"Julius Lound, a member in good standing whose death was reported August 30, 1928.

"To provide for the payment of these claims this call for our Benefit Fund was made necessary.

"I, C. E. Fielder, Secretary of the Prudence Mutual Life Insurance Association, do hereby certify that the foregoing is a full, true and correct copy of a resolution ordering the Secretary to levy an assessment against the members of this Association, to be known as Assessment No. 3, duly adopted by the Board of Directors of said Corporation at a special meeting of said Board held at the office of the Association on the 20th day of October, 1928, at the hour of 8 p. m.

"(Seal)             C. E. FIELDER,

"Secretary, Prudence Mutual Life Insurance Association."

Thereafter, notice of the levy of the assessment was duly and regularly mailed to all members:

"Prudence Mutual Life Insurance Association

"1405 O Street, Sacramento, California,

"November 1, 1928.

"Benefit Call No. 3.

"Clyde T. Carnahan

"Maple Apts., Manteca, California.

"Your call is for $1.00.

"Since those mentioned in Benefit Call No. 2, made July 15, 1928, the following death claims have been paid: Mrs.

Helen Morgan, Sacramento, Calif., Julius Lound, Petaluma, Calif. This Association is 15 months old, has paid 4 death claims and made only 2 benefit calls to date. It is now necessary, as provided in the second paragraph of your Certificate, to make a call for the benefit fund to provide funds for payment of future death claims. Promptness in meeting this payment is greatly appreciated by the Home Office. Send it Now.

"Return this notice with your remittance and it will be stamped paid and returned to you as your receipt.

"C. F. FIELDER,

"Secretary.

"P. S. Please be sure that your remittance reaches the Home Office within 15 days from the date of this notice."

Note: This is a form of notice similar to the one mailed all members, including Leon A. Cookson.

Upon receipt of the foregoing notice Leon A. Cookson, now deceased, mailed to the defendant association a check in the sum of $1. This check was drawn on a bank in Sebastopol, was received by the appellant at Sacramento, and in due course forwarded to the First National Bank at Sebastopol upon which it was drawn. On November 19, 1928, the bank returned to the appellant the check in question marked "N.S.F." (meaning "not sufficient funds"). On the same day the appellant wrote to the said Leon A. Cookson stating the fact that the check had been returned marked "N.S.F.", concluding its letter as follows: "We are holding this check in our office and ask that you advise us just what disposition to make of this check." To this letter the said Leon A. Cookson replied stating that the check was O.K. On or about the 1st of December, 1928, the said Leon A. Cookson forwarded to the appellant a check for $2 to cover his semi-annual dues falling due on the first day of December, 1928. This check was received and cashed by the appellant and the amount thereof retained.

Counsel for the plaintiff stipulated at the trial that the $1 check had never been paid.

Upon this appeal it is contended by the appellant that the policy of insurance issued upon the life of Leon A. Cookson lapsed by reason of the failure to pay the assess-

ment of $1 levied in October, 1928. On the part of the respondent it is contended, first: That the alleged assessment is invalid; second: that the check was received in payment; and third: that the appellant waived any forfeiture of the policy on account of nonpayment of the assessment, by accepting and retaining the semi-annual dues paid by the said Leon A. Cookson, on or about the first day of December, 1928.

From the views hereinafter expressed, consideration need be given only to the first contention of the respondent, to wit: That the alleged assessment was and is invalid. The by-laws of the association, among other things, provide as follows: ''Each member shall pay to the secretary any and all assessments made from time to time in consequence of the death of a member or members of the Association. No assessment shall be more than $1.00 on account of the death of any one member. The funds collected from members by assessments upon the death of a member or members shall constitute the death benefit fund.'' The by-laws further provided that this fund should be used for no other purpose than the payment of death claims allowed by the board of directors, upon proof to the satisfaction of the board.

The power of the board of directors of the association in levying assessments to pay death benefits is strictly limited by the provisions of section 453 of the Civil Code. So far as applicable here that section reads: ''Each Association provided for in this chapter may, on the death of a member, levy an assessment on the surviving members of not exceeding $3.00 for each member and collect the same and pay the benefits provided in the contract of insurance,'' etc. A reference to the excerpt from the defendant's answer which we have set forth herein discloses that no reference is made to the fact of any members having been deceased, nor does it set forth any facts showing the necessity for levying the assessment. It is simply an allegation that an assessment of $1 per member was levied for the purpose of raising sufficient funds with which to meet death benefits.

· This brings us to a consideration of the resolution constituting the assessment, and showing the purpose for which

it was levied. We here again quote that portion of the resolution made the basis, and showing the purpose of the assessment, to wit: "Be it Resolved that as the benefit fund of the Association is below the sum of $1.00 for each $1000.00 of insurance in force, that being the amount required to be carried on hand, the secretary is instructed to levy an assessment, to be called Assessment No. 3, against the members of this Association, according to the terms of their respective certificates, to provide money for the payment of future death claims." The notice sent out with the resolution purporting to authorize the levying of an assessment sets forth that payment had already been made to Julius Lound, whose death was reported August 30, 1928. The assessment, however, purports to cover, not for past deaths, but to make provision for future death claims, directly contrary to the authority conferred and limited by section 453 of the Civil Code. This question has been passed upon a number of times by different courts and the power to levy assessments is strictly limited to the purposes set forth in the statutes and by-laws of the association.

In volume 3, second edition, of Joyce on Insurance, section 1263, we find the following: "A Company is authorized to levy an assesment upon policy holders only for death losses that have actually occurred. It cannot claim a forfeiture of a policy for nonpayment of an assessment made in advance of a death loss." Again, in section 1310 of the same volume the law is thus stated: "As has been stated in a prior section the act of making an assessment is a ministerial, and not a judicial one; therefore, no presumption can arise in favor of the regularity of an assessment, and it is an affirmative matter, both of pleading and evidence necessary to establish a forfeiture for nonpayment of an assessment, that the assessment should appear to have been made in the manner, mode and in conformity with the authority given, and for a proper purpose. The general allegation that it was duly made is insufficient." (We may here refer to the excerpt of appellant's answer set forth herein, wherein it is deficient in that it contains no such allegation.) "It must appear that the loss occurred before making the assessment, and during the terms of the policies assessed; also, that the levy was made upon all the members liable to contribution."

In 32 C. J. 1216 the power of a board of directors to levy assessments is defined as follows: "The power to levy assessments may be exercised only when the conditions prescribed in the contract of insurance exist, and to justify assessments they must be such as are authorized by statute, by the charter or by-laws of the Company, or by the insurance contract." Nothing in the statute, the by-laws, the charter or the insurance contract involved in this case authorizes the levy of an assessment for future death claims.

In *Hogan* v. *Pacific Endowment League,* 99 Cal. 248 [33 Pac. 924], regarding the power of boards of directors to levy assessments, the rule is thus stated: "In levying assessments the Directors act ministerially and not judicially, and, therefore, no presumption arises in favor of their legality or regularity. (Citing Niblack on Mutual Ben. Societies, sec. 280; Bacon's Ben. Societies, sec. 377.) Nor can assessments be made for anticipated losses, unless provision therefor is made in the articles of the Association. (Citing *Rosenberger* v. *Washington Mut. Fire Ins. Co.,* 87 Pa. St. 207; *Crossman* v. *Massachusetts Ben. Assn.,* 143 Mass. 435 [9 N. E. 753].)" The same rule is set forth in the case of *Schultz et al.* v. *Citizens Mut. Life Ins. Co.,* 59 Minn. 308 [61 N. W. 331], where the Supreme Court of Minnesota held that an assessment on policy-holders could only be levied for losses that had actually occurred, and not for future losses or future anticipated losses.

In 14 Ruling Case Law, page 970, the text reads as follows: "A Mutual Insurance Company whose constitution and By-Laws do not provide for an emergency fund cannot justify assessments for the creation of such fund."

In May on Insurance, volume 2, fourth edition, section 557, the text on the subject we are considering reads: "An assessment can only be valid when laid under the conditions stated in the charter. It must appear that such a state of affairs existed when the vote was passed as to authorize the vote itself, as that losses and expenses had actually been incurred beyond the available assets on hand which could not be met but by an assessment." And further, in section 560b it is stated: "A member does not forfeit by neglecting to pay an assessment not made in accordance with the provisions of the Constitution of the order, although it was in accordance with a custom of the order with which the member was not shown to be acquainted."

As the alleged assessment involved in this action, and for the nonpayment of which appellant claims a forfeiture of the policy sued upon, upon its face appears to have been made in contravention of the provisions of section 453 of the Civil Code as well as in contravention of the cases which we have cited, it follows that no forfeiture of the policy upon which this suit is based has occurred, and that the appellant has shown no defense to the action. Whether the receipt and retention for a considerable period of time of the $1 check by the appellant, and the receipt and retention of the $2 paid as dues, constituted, in the first instance, a payment of the assessment and a waiver of default thereafter, appear to be immaterial, as from what we have set forth the judgment must be affirmed, and it is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 20, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 18, 1931.