Peter C. Frick, Appellee, v. Hartford Life Insurance Company, Appellant.

INSURANCE: Life Insurance—Nonresident Companies—Service—
1 Jurisdiction. Jurisdiction of a nonresident insurance company, which has, under Sec. 1808, Code, 1897, agreed that service of process on it may be made by serving the state auditor (now commissioner of insurance), is complete both by said service and by appearance and pleading generally.

INSURANCE: Life Insurance—Foreign Companies—State Courts—
2 Extent of Jurisdiction. A court of equity of this state, on proper service or appearance, has, in an action by an individual policy holder, jurisdiction, not only of a foreign non-mutual life insurance company, but jurisdiction: (a) to enjoin assessments on a policy of insurance in violation of the contract terms thereof; (b) to determine the amount of assessments illegally exacted (whether such determination be called an "accounting" or not); and (c) to render personal judgment for the amount of such illegal exaction, *provided such determination involves (1) no interference with the internal management of the affairs of the company, and (2) no interference with the discretionary powers of its officers.* So held where the contract amount of an assessment involved no exercise of discretion on the part of the officers, but was determinable by mathematical calculation only.

INSURANCE: Life Insurance—Nonresident Companies—Liabilities
3, 5 and Duties—Extent.   Nonresident life insurance companies, doing business in this state in accordance with the laws thereof, are subject to the same liabilities, restrictions and duties as resident corporations. (Sec. 1639, Code, 1897).

INSURANCE: Life Insurance—Judgment Against Foreign Com-
4 panies—Enforcement.   The possibility that a foreign corporation, doing business in this state and subject to the laws thereof, may not comply with a proper decree of a court of this state, is no reason why the decree should not be entered.

INSURANCE: Life Insurance—Nonresident Companies—Liabilities
3, 5 and Duties—Extent.

TRIAL: Reception of Evidence—Books of Foreign Corporations—
6 Failure to Produce.   In the trial of an action against a foreign corporation, in default for want of answer, the court, on issues involving the books of the concern, may order the books produced, and, on failure to produce them, may order the plaintiff's

pleading to be taken as true, or, in lieu of such action, may receive any other competent evidence to establish the facts. Secs. 1635, 4654—4658, Code, 1897.

*Appeal from Linn District Court.*—F. O. Ellison, Judge.

Friday, September 29, 1916.

Rehearing Overruled January 22, 1917.

Defendant is a life insurance company, organized under the laws of the state of Connecticut, and licensed to do business in the state of Iowa. In the year 1883, the plaintiff, Peter C. Frick, entered into contracts for life insurance in the defendant company, in what was known as its Safety Fund Department. The insurance was represented by five policies or contracts for $1,000 each. These contracts provided for the payment of assessments by Mr. Frick, in accordance with a schedule of rates attached to the policies, and made a part thereof. By this schedule, the rate of assessment increased from year to year until Mr. Frick should reach the age of 60 years, at which age the rate of assessment was $2.68 for every $1,000 of a total indemnity of $1,000,000. The petition in this suit set out the five contracts, and alleged that the defendant had been assessing the plaintiff at a rate in excess of that specified in the contract; that he had no knowledge of this until about August, 1910, shortly prior to the commencement of this suit; that he had been forced to pay the illegal assessments to avoid forfeiture of his contracts; and prayed for an injunction restraining the defendant from assessing the plaintiff at a rate in excess of that provided in the contracts, and for an accounting of the sums of money illegally collected by the defendant in excess of the rates provided in the contracts, and for judgment against the defendant for the amount found to be due, and for such other and further relief as might be equitable. Defendant interposed a demurrer to the petition, which was overruled, and elected to stand

upon its demurrer.  Some time afterwards, a default was
entered against the defendant for want of a plea, and
plaintiff introduced evidence to sustain the allegations of
his petition.  A decree was entered in plaintiff's favor, and
defendant appeals.—*Affirmed.*

*Jones, Hocker, Hawes & Angert, Dawley, Jordan &
Dawley,* and *F. W. Lehmann,* for appellant.

*Deacon, Good, Sargent & Spangler,* for appellee.

PRESTON, J.—The contracts, as shown by Exhibit "A,"
attached to the petition, recite that "The Hartford Life and
Annuity Insurance Company" (the name of which company
was afterwards changed to the Hartford Life Insurance
Company, as alleged in the petition), in consideration of the
representations, agreements, and warranties made in the
application herefor, and of the admission fee paid, and of
the sum of $10, to be paid to said company, to create a safety
fund, as hereinafter described, and of $3 per annum, for ex-
penses, to be paid as hereinafter conditioned, and of the
further payment, in accordance with the conditions hereof,
of all mortuary assessments, does hereby issue this certifi-
cate of membership in its safety fund department to Peter
C. Frick of Cedar Rapids, Linn County, state of Iowa, with
the following agreements:  [Here are recited a number of
provisions which are not material to the present case.]  The
contract then recites:

"Upon the death of the member aforesaid while this
certificate is in force, all the conditions hereof having been
conformed to by said member, and on the receipt by the
president or secretary of said company of satisfactory
proofs of such death, an assessment shall be made upon the
holders of all certificates in force in said department at the
date of such death, according to the table of graduated as-
sessment rates, given hereon, as determined by their respec-
tive ages and the number of such certificates in force at the

date of such death, and the sum collected thereon (less ten cents per each member assessed for cost of collection) shall be paid—provided, however, that in no case shall the payment upon this certificate in the event of such death exceed $1,000 (less $15 as a post mortem contribution to said safety fund, if the deceased member shall not have fully contributed therefor as hereinbefore required, together with any balance due said company)—to his legal representatives within 90 days after the receipt of such proofs, upon presentation and surrender of this certificate. * * * And said company further agrees that such mortuary assessment shall be in no wise chargeable or liable for any use or purposes other than for the payment of death claims, except as above mentioned.

"THIS CERTIFICATE IS ISSUED BY THE COMPANY AND ACCEPTED BY THE MEMBER UPON THE FOLLOWING EXPRESS CONDITIONS AND AGREEMENTS: * * * The person to whom this certificate is issued agrees to pay to said company $3 per annum for expenses on the first day of the month after date of issue, and at every anniversary thereafter so long as this certificate shall remain in force, or by monthly or other pro rata installments of the same in advance for periods of less than a year. And also agrees to pay said company, upon each certificate that shall become a claim, *an assessment in accordance with the Table of Graduated Assessment Rates, as provided herein,* within 30 days from day on which notice bears date. * * *

"The holder of this certificate further agrees and accepts the same upon the express condition that, if either the monthly dues, assessments, or the payment of the $10 toward the safety fund, as hereinbefore required, are not paid to said company on the day due, then this certificate shall be null and void. And that, in case any country, state, or municipality in which the member or his legal representatives may reside shall levy a tax to be paid by said company

on account of any moneys collected hereon, said member agrees to pay the amount of such tax to said company in addition to the payment hereinbefore named, as part of the payment needed to hold this certificate in force."

Printed on the contract is a contract between the Hartford Life Insurance Company and the trustee of the safety fund, which contract is in no way material to the present, controversy. Printed on the contract of insurance also is a schedule, to which, as already shown, reference is made in the body of the contract, which is entitled, "Table of Graduated Assessment Rates for Death Losses for every $1,000 of a Total Indemnity of $1,000,000." This table is set out in the abstract, and shows the rate at each age from 15 to 60 years. Age 60 years is the last age recited in that table, and the rate at that age, as shown by that table, is $2.68. Below that table is printed on the contract:

"These rates decrease in proportion as the total indemnity in force increases above One Million Dollars in amount, and are calculated so as to cover the usual expense of collecting."

The demurrer to the petition, filed November 7, 1911, was on the following grounds: That the court has no jurisdiction of the person of the defendant or of the subject of the action, nor jurisdiction to grant the relief prayed for. The findings of the trial court and the decree are, in substance:

"That the defendant was a corporation organized under the laws of the state of Connecticut; that, on or about the 8th day of May, 1883, the defendant issued to the plaintiff five contracts of insurance in the amount of $1,000 each; that, by the terms of each of the said contracts, it was provided that, upon the death of a member, an assessment shall be made upon the holders of all certificates in force at the date of such death, according to the table of graduated assessment rates given upon said contracts, as determined by

the respective ages and the number of such certificates in force at the date of such death. That, by the table of graduated assessment rates attached to and printed upon said contracts issued to the plaintiff, the assessment rate increased from year to year until the plaintiff should reach the age of 60 years, at which age his rate was $2.68, and beyond which age no increase of assessment rate was provided for by said table of graduated assessment rates. That the plaintiff has, at all times since the date of said contracts, performed all the conditions to be performed on his part; that he reached the age of 60 years September 19, 1897; that, commencing with the assessment levied May, 1899, and at all times since that date, the defendant has continually assessed the plaintiff on the 5 contracts at a rate in excess of $2.68 per thousand upon a total indemnity of $1,000,000. That, prior to October, 1911, the plaintiff had no knowledge that he was being assessed by the defendant upon said contracts at a rate other than that provided for in said contracts. That the ratio, so called and used by the defendant in assessing all members of its safety fund department, is the multiple or number of times the rate of each respective certificate or contract necessary to use to determine the amount each respective member must pay on each assessment call. That beginning with the month of May, 1899, and at all times since that date, the defendant has assessed the plaintiff on each of the contracts set out in the petition at a rate in excess of $2.68, multiplied by said ratio. That the amounts paid by the plaintiff upon the certificates set out in the petition since the month of May, 1899, together with the date of payment, the common ratio used, and the amount of each assessment that was due under the contracts, the amount that each payment was in excess of $2.68 multiplied by the common ratio used, the amount of the interest on each over-payment, and the total amount due from defendant to plaintiff on account of said

over-assessments paid by the plaintiff, was as shown by the following schedule, Exhibit '8.' "

The decree then recites the schedule, which shows a total amount due the plaintiff from the defendant, on account of the over-assessments and interest thereon, of $2,095.97. The decree then further finds that the amount of each assessment is determined by the defendant as follows:

"By an accurate calculation, the exact amount which will be produced by the assessment at one rate as published on the back of the certificate at the attained age of each member whose certificate is in force, is ascertained. This sum is then divided into the whole amount of death claims which have accrued in the quarter; and the quotient is the factor which we call the ratio. The ratio is the number of times the rate which it is necessary for each member to pay in order to make up the full amount of death claims approved, due allowance being made for lapses. That the total amount paid by the plaintiff upon the five contracts in excess of the $2.68 rate since the month of May, 1899, with interest figured on the excess payments from the time when made to date, is the sum of $2,095.97. That the defendant was not entitled to assess the plaintiff upon the five contracts in said company after he reached the age of 60 years, at a greater rate than $2.68. That the plaintiff is entitled to recover from the defendant all sums paid by him upon the certificates in suit since plaintiff reached the age of 60 years, in excess of the sum of $2.68, multiplied by the ratio actually used by the defendant in determining the amount of each assessment, with interest upon each such excessive sum from the date of each respective payment at 6 per cent per annum, and to a decree perpetually enjoining the defendant from assessing the plaintiff upon the certificates or contracts in suit at a rate other

than $2.68, multiplied by the ratio used for the safety fund department."

After thus finding the facts, the court, in its decree, provided:

"That the defendant be, and hereby is, perpetually enjoined from assessing this plaintiff, Peter C. Frick, upon his five certificates or contracts, numbered 38,361—62—63—64 and 65, at a rate other than $2.68 multiplied by the ratio used by defendant for the safety fund department, and that the defendant be, and hereby is, perpetually enjoined from assessing this plaintiff, Peter C. Frick, upon his said five certificates or contracts at a rate in excess of $2.68 per $1,000 on a total indemnity of $1,000,000; and it is further ordered, adjudged and decreed that the plaintiff have and recover of the defendant, judgment in the sum of $2,095.97, with interest at 6 per cent per annum from the date of this judgment until paid, together with costs of this action, taxed by the clerk in the amount of $28.60."

The errors assigned are: (1) The court erred in overruling appellant's demurrer to the petition. (2) The court erred in rendering a money judgment in favor of the appellee and against the appellant corporation upon the evidence in this case.

It appears that the evidence introduced by plaintiff was not taken down, certified, and preserved, as required; so that the second assignment of error may not be considered. Appellant contends that it is entitled to be heard upon the question of the ruling on the demurrer, and appellee insists that no other question can be reviewed. Appellant's propositions are that the courts of Iowa have no jurisdiction over the person of the appellant, or of the subject-matter of the action. The argument is that the courts of Iowa have no jurisdiction of the defendant, a foreign corporation, to grant the relief of injunction, accounting, or even a money judgment, when such judgment

can be had only after an accounting has been taken; that such relief is beyond the power of a court of equity in this state, which has only a limited or qualified jurisdiction over a foreign corporation; that remedies such as are sought here, if granted at all, must be given by the courts of the domicile of the corporation,—in this case, the courts of Connecticut. This presents a question not heretofore determined by this court, so far as we have been able to find.

1. Appellant's cases, cited in Paragraph 2 of the opinion, on the question as to whether the courts of Iowa have jurisdiction of the subject-matter of the action, are also cited on their proposition that the courts of this state have no jurisdiction over the person of the defendant. Section 1794 of the Code provides for foreign insurance corporations doing business in this state, and among other provisions is this:

1. INSURANCE: life insurance: non-resident companies: service: jurisdiction.

"Upon its complying with the provisions of this section, and of Section 1808, Chapter 8, of this title, and the payment of $25, the auditor shall issue to it a certificate of authority to do business in this state."

Section 1808 of the Code, just referred to, provides:

"Every life insurance company and association organized under the laws of another state or country shall, before receiving a certificate to do business in this state * * * file in the office of the auditor of state an agreement in writing that thereafter service of notice or process of any kind may be made on the auditor of state, and when so made shall be as valid, binding and effective for all purposes as if served upon the company according to the laws of this or any other state."

The original notice and the return of service thereof in this case show that service on the defendant was obtained in the manner provided in this statute. Further-

more, the defendant has, in response to the notice, appeared in the proceeding by filing its demurrer. There can be no doubt, we think, that the court had jurisdiction of the person of the defendant.

2. The principal question argued on both sides is as to appellant's proposition that the courts of Iowa have no jurisdiction of the subject-matter of the action. In support of the proposition, appellant cites the following authorities: *State ex rel. Hartford L. Ins. Co. v. Shain*, 245 Mo. 78 (149 S. W. 479); *Hartford Life Insurance Co. v. Ibs*, 35 Sup. Ct. Rep. 692; *Clark v. Mutual Reserve Fund Life Assn.*, 14 App. Cases (D. C.) 154 (43 L. R. A. 390); *State ex rel. Minnesota Mut. L. Ins. Co. v. Denton*, 229 Mo. 187; *Taylor v. Mutual Res. F. L. Assn.*, 97 Va. 60 (45 L. R. A. 621); *Condon v. Mutual Res. F. L. Assn.*, 89 Md. 99 (44 L. R. A. 149); *Royal Fraternal Union v. Lunday*, 51 Tex. Civ. App. 637, 640 (113 S. W. 185); *Eberhard v. Northwestern Mut. L. Ins. Co.*, 210 Fed. 520; *Supreme Council of Royal Arcanum v. Green*, 35 Sup. Ct. Rep. 724 (45 Ins. Law Journal 649); *Howard v. Mutual R. F. L. Association*, 125 N. C. 49 (45 L. R. A. 853); *Fisher v. Charter Oak L. Ins. Co.*, 20 J. and S. (N. Y.) 179; *House v. Cooper*, 30 Barb. (N. Y.) 157; *Cumberland Coal Co. v. Hoffman Coal Co.*, 30 Barb. (N. Y.) 159, 171; *Kansas & E. R. Cons. Co. v. Topeka, S. & W. R. Co.*, 135 Mass. 34; *Madden v. Penn Electric Light Co.*, 181 Pa. 617; *Gregory v. New York, L. E. & W. R. Co.*, 40 N. J. Eq. 38.

2. INSURANCE: life insurance: foreign companies: state courts: extent of jurisdiction.

The first case cited seems to be in point as sustaining defendant's contentions, although the statutes referred to in that case are somewhat different from our own. Counsel for appellant in argument state that the defendant, being a foreign corporation, is not subject to the same jurisdiction which the courts of Iowa have

3. INSURANCE: life insurance: non-resident companies: liabilities and duties: extent.

over the affairs of a domestic corporation.   Section 1639 of the Code provides:

"All foreign corporations  *  *  *  doing business in this state shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater powers."

The opinion of the Missouri court in the case referred to is directly opposed to the opinion of the appellate court of the state of New York, in *Pfeffer v. Hartford Life Ins. Co.*, New York Law Journal, July 28, 1911, page 1851 (160 App. Div. 876); and appellee's contention has been sustained by the Federal Court of Appeals, as will appear later.  Furthermore, substantially all the cases cited by the appellant, except the Missouri case, are cases against mutual associations.   It is appellant's contention that, before a money judgment for the excess of assessments, which plaintiff claims were unlawful and illegal, can be granted, as prayed for, there must be an elaborate accounting between the defendant and the plaintiff, involving a thorough examination of all the defendant's books, records and accounts, as to the number of deaths occurring during the respective assessment quarters, the amount of the policies which each member held at the time of his death, and an exhaustive examination of the amount of insurance then outstanding during each of the quarterly assessment periods must be had, in order to determine whether plaintiff has been fraudulently assessed in excess of the amount contemplated, and this upon a computation made as provided in the table of rates attached to the certificate of membership at each assessment period; that such accounting against a foreign corporation is beyond the power of the court of equity in this state to grant, and would involve an unwarranted and unenforceable interference with the internal affairs of such foreign corporation, whose officers, books and

records are beyond the boundaries of this state. It is also contended that such a decree as is prayed could not be enforced by the process of contempt, for the reason that the corporation and its officers are in another state. The case must be decided, of course, upon the allegations in the petition; but, under such allegations, even though an accounting was asked, the plaintiff could, if it had the evidence, establish its claim by evidence without an accounting. The fact is that plaintiff did introduce evidence and establish his claim without an accounting. The trial court did not, by its decree or otherwise, require an accounting by defendant. The gravamen of the complaint by plaintiff should be kept in mind. He is a resident of Iowa, and sued defendant, a foreign corporation, alleging a breach of a written contract on the part of defendant. The petition alleges, and it is admitted by the demurrer, that defendant has assessed the plaintiff, since he reached the age of 60 years, at a rate in excess of the rate provided in the contract. Plaintiff is seeking to recover the excessive assessments paid by him, and to enjoin the defendant from further assessing him on his contract at a rate beyond that provided by his contract. The defendant in the instant case is not a mutual company; at least it does not so appear in this record. It obtains profit for carrying out its part of the contract, and is paid $3 per year profit per thousand on this insurance, besides all the expenses it incurs. It issues various kinds of policies; so that, we take it, the defendant is a private stock corporation. It alone is responsible to plaintiff for a breach of the contract. The plaintiff does not sue as one of a class. He is not interested in any other policy holder or in any other contract issued by the defendant. The result of this suit cannot affect any other policy holder. By the demurrer, defendant admits that it has broken its contract with plaintiff, but claims that the courts of this state have no jurisdiction to compel the per-

formance of defendant's contract obligations with plaintiff, because, in ascertaining the amount of plaintiff's damage, it is necessary to have an accounting of the sums paid by the plaintiff in excess of the amount called for by his contract. The contract provided that the plaintiff should pay to the company upon each certificate that should become a claim, an assessment in accordance with the table of graduated assessment rates as printed thereon, within 30 days from the day on which the notice bears date. The contract also provides that, upon receipt of proof of death, "an assessment shall be made upon the holders of all certificates in force at the date of such death, *according to the table of graduated assessment rates given thereon,* as determined by their respective ages and the number of said certificates in force at the date of such death."

The defendant adopted the practice of making assessments quarterly. The amount of each quarterly assessment that could be legally levied is determined by two factors, as shown by the provisions of the contract just quoted: one, the rate printed on the back of the policy; and the other, the ratio or number of times the rate necessary to make up the assessment, this ratio varying according to the amount of outstanding insurance and the amount of death losses to be paid. According to the terms of the contract, the defendant and its officers have no discretion whatever in fixing the ratio. It is a mere matter of arithmetic. The ratio is determined by a computation involving the whole amount of death claims that shall have accrued in the quarter, and the total amount of insurance in force. That ratio should be used as a multiple of the plaintiff's rate, taken from the schedule on his policy, which, by the terms of his contract since he reached the age of 60 years, should have been $2.68. What the defendant has in fact done has been to assess the plaintiff at a rate of $4 instead of $2.68, and the common ratio was multiplied by

this increased rate instead of the rate provided by his contract. All that the plaintiff asked for was an accounting of this excess which he had been obliged to pay above the assessment that would have been legal under the terms of his contracts. The essential facts necessary to arrive at such an accounting were a matter of proof, involving only evidence of the amount of each assessment paid by the plaintiff, and the ratio used by the defendant in making each assessment. When these ratios used by the defendant at the times of the various assessments were proven, it was then a mere matter of computation to determine the assessment which the defendant could legally make against the plaintiff, and thereby determine, by another computation, the amount which the plaintiff had been compelled to pay in excess of that which was legal. The amount of the interest on such over-payments was also a matter of computation. The defendant had used a certain ratio on each assessment levied by it. The essential fact, in taking this accounting asked by this plaintiff, was simply the proving of that ratio in each particular instance; that is, the ratio actually used by the defendant in each particular instance. The determining of this ratio actually used in each particular instance in no way required the over-hauling of the internal affairs of the defendant corporation, but simply involved the proving of the fact as to what the defendant had actually done. That fact could have been proven, of course, by an examination of the defendant's books and records, but the plaintiff found another way of proving those facts, as the decree of the court shows that it had these facts before it when it entered the decree. From the facts which the plaintiff was able to produce in evidence before the court in proving his case, the court was able to take this accounting itself, without the necessity of compelling the production of books and papers, and without the necessity of referring the matter to a referee. It is

apparent, therefore, that no interference with the internal management of the defendant corporation was required.

As stated, appellant's cases, or most of them, involve mutual companies. In the instant case, under the contract, there is no discretion lodged in the defendant company as to the amount of the assessment that may be levied against plaintiff. This is a matter of contract. The judgment and decree entered in this case will in no way interfere with the internal management of the defendant corporation, nor does it force any officer to do anything involving his official discretion. Nor does the determination of plaintiff's rights in the instant case involve the determination of the rights of every other policy holder of the corporation, as in a mutual concern. In a mutual company, a member's rights are determined not only by the contract, but by the charter, constitution, and by-laws of the association. Some of the cases say that a policy holder in a mutual company stands in a two-fold relation toward the company: he is a policy holder and a member, and is both insurer and insured. *Condon v. Mutual Reserve*, 44 L. R. A. 149, 152. We shall not attempt to review the cases cited by defendant. In the cases cited by appellant, or most of them, there were involved questions as to whether the corporation could be required to produce its books and accounts, and list of mortality expenses, salaries, previous assessments, and all matters incident thereto since the plaintiff became a member of the association. In others, there were questions as to the appointment of a receiver, the taking of an accounting for the benefit of plaintiff and of others similarly situated. Others were brought by the plaintiff in his own behalf and for all others similarly situated, and it was held that, under such circumstances, the granting of the relief prayed for involved an interference with the internal affairs of the foreign corporation. In *Taylor v. Mutual Res. F. L. Assn.*, (Va.) 45 L. R. A. 621, at 626, the court discusses

the question as to what constitutes internal management of
a corporation. See also *Westminster Nat. Bank v. New
England Electrical Works*, (N. H.) 3 L. R. A. (N. S.) 551–
555. In the case of *Eberhard v. Northwestern Mut. Life*,
210 Fed. 520, the court said:

"It is plain that the accounting asked for by the bill
requires inquiry into the entire operation of the company,
and the handling of its funds."

Further on in the opinion, however, the court says:

"If this were a suit asking only for the interpretation
and the enforcement of a policy of insurance, the complain-
ants might well have recourse to this court, because it is
only just and fair that a citizen of Ohio who takes a policy
in a foreign corporation after the company had agreed that
service of process in Ohio might be made upon it, have
ready resort to the courts of Ohio for redress."

It seems to us that is what the plaintiff in the case at
bar is seeking to do; that is, have his rights interpreted
and his rights under that contract preserved. Appellee
cites the following cases, as sustaining his contention that
the district court of Linn County, Iowa, had jurisdiction of
the subject matter of the action: *Pfeffer v. Hartford Life
Insurance Co.*, New York Law Journal, July 28, 1911, page
1851 (160 App. Div. 876) ; *Harrison v. Hartford Life Insur-
ance Co.*, New York Law Journal, June 8, 1909 (137 App.
Div. 918, 122 N. Y. Supp. 1130, 201 N. Y. 545, 95 N. E.
1130) ; *Castagnino v. Mutual Reserve Fund Life Assn.*, 157
Fed. 29; *Eberhard v. Northwestern Mut. Life Ins. Co.*, 210
Fed. 520; *Strauss v. Mutual Reserve Fund Life Assn.*, (N.
C.) 54 L. R. A. 605; *Ebert v. Same*, (Minn.) 83 N. W. 506;
*Benjamin v. Same*, (Cal.) 79 Pac. 517; *State ex rel. Minn.
Mut. v. Denton*, 229 Mo. 187 (129 S. W. 709) ; 19 Cyc. 1238;
*Babcock v. Farwell*, (Ill.) 91 N. E. 683; *Edwards v. Schil-
linger*, (Ill.) 91 N. E. 1048; *Westminster Nat. Bank v. New
England Electrical Works*, (N. H.) 3 L. R. A. (N. S.) 551;

*Selover v. Isle Harbor Land Co.,* (Minn.) 98 N. W. 344;
*State ex rel. Lake Shore Tel. and Tel. Co. v. De Groat,*
(Minn.) 123 N. W. 417; *Pierce v. Equitable Life* (Mass.),
12 N. E 858; *Guilford v. Western Union* (Minn.), 61 N. W.
324; *Wilson v. Martin-Wilson Automatic Fire-Alarm Co.*
(Mass.), 20 N. E. 318; Code of 1897, Sec. 1639; 19 Cyc.
1331; *Nelson v. Nederland Life Ins. Co.,* 110 Iowa 600. We
shall not refer to all of them, but say that, in our opinion,
the cases sustain plaintiff's contention, and ought to be
adopted in a case like this, as the rule for this state. In
the case of *Pfeffer v. Hartford Life Insurance Company,*
before referred to, the Supreme Court of New York said:

"The plaintiffs have brought an action alleging that
the defendant has illegally levied assessments upon them
in excess of the amount fixed by contract. The suit is
brought in equity and the plaintiffs seek an accounting
and injunction. The defendant is a foreign corporation
and demurs on the ground that this court has no juris-
diction in such an action against a foreign corporation. A
similar action has been brought heretofore by other par-
ties in this court against the same defendant (*Harrison v.
Hartford Life Insurance Co.*) and this court has not only
assumed jurisdiction, but its judgment granting the relief
has been affirmed by both the Appellate Division (137 App.
Div. 918) and the Court of Appeals (201 N. Y. 545). Aside
from any authority which that judgment may have as a
precedent, I find no reason why the courts should not take
jurisdiction of this form of action and give at least the re-
lief of an accounting. The assessments do not rest in this
case within the discretion of the defendant's directors, but
their amount is fixed by contract. No order of this court
will interfere with any internal management of the corpo-
ration or force any officer to do anything involving his offi-
cial discretion. There is but little authority in this state
as to the exact limits of the jurisdiction which the courts of

this state should assume by virtue of Section 1780 of the
Code of Civil Procedure, but in every case that I have found
where this jurisdiction was denied, the relief asked required
the visitation of the court into the internal management of
the corporation or interfered with the untrammeled dis-
cretion of the directors.      The rule deducible from the
cases is that the courts of this state will entertain actions
against foreign corporations in favor of resident plain-
tiffs not only to recover at law, but also in equity, includ-
ing suits in favor of resident shareholders who have clear
rights to be protected and they will compel the enforce-
ment by officers and directors of foreign corporations if
properly brought into court. of the contract obligations of
the corporation, if the n      t or violation of such con-
tract amounts to a breach ... trust or duty, which will be
productive of injury to such resident shareholder in mat-
ters removed from the ordinary powers or discretion of
such directors and no adequate remedy at law is available.
In my opinion there is ample authority sustaining the
jurisdiction of the court in this action. . . . The demurrer
is therefore overruled."

This ruling was affirmed by the Appellate Division with-
out opinion (160 App. Div. 876).

The case of *Harrison v. Hartford Life Insurance Co.*
was another case in New York, a case similar to the case
at bar.      In this case, the New York Court assumed juris-
diction and took the accounting just as plaintiff asks for in
this instant case, and entered judgment against the defend-
ant and decree enjoining it from further violations of the
contract.      That judgment and decree were affirmed by the
Appellate Division and the Court of Appeals.      (See *Harri-
son v. Hartford Life Ins. Co.*, New York Law Journal, June
8, 1909 [137 App. Div. 918; 201 N. Y. 545; 95 N. E. 1130].)

The case of *Castagnino v. Mutual Reserve Fund Life
Association,* 157 Fed. 29, was a case involving the same

questions which are presented in the Mutual Reserve Fund
cases cited by appellant in its ' brief, namely, the *Clark,
Taylor,. Condon* and *Howard* cases.   It is an opinion of the
U. S. Circuit Court of Appeals of the Sixth Circuit, Judge
Lurton, later of the U. S. Supreme Court, sitting.   This
opinion is decidedly interesting; for the Federal Court of
Appeals refers to that series of cases, and declines to follow
the rule announced therein.   The opinion says:

"If the cases cited by the court below were decided
rightly, the demurrer was properly sustained.   *   *   *   The
present case therefore turns upon the strength of the rule
promulgated in those cases.   The leading ones, the *Clark*
from the District of Columbia, the *Condon* from Maryland,
the *Taylor* from Virginia, and the *Howard* from North Car-
olina, were all decided about the same time, in 1899, fol-
lowing the decision in the *Clark* case.   *   *   *   The lead-
ing cases referred to were all attempts, by suits in equity,
to enjoin the collection of illegal assessments, and to re-
cover them back, and relief was denied on the ground that
the court of a state other than the state of the insurance
company could not exercise jurisdiction to inquire into the
internal management and administration of a mutual life
insurance company, because that was beyond its reach, and
it could not make its order effective in the way of punish-
ing or correcting either the officers of the corporation or the
corporation itself, if it should find there had been a dere-
liction of duty.

"Later than these are the cases of *Strauss, Ebert* and
*Benjamin* (citing references).   The *Strauss* and *Ebert*
cases were suits to recover damages for the wrongful can-
cellation of certain policies of this company.   The *Ben-
jamin* case was a suit to recover back illegal assessments
which were made and collected.   The cases were not dif-
ferent essentially from that at bar.   In each the court was
required to construe the constitution, by-laws, and policy,

the fundamental law of the association, and determine
therefrom whether certain assessments were or were not
valid.    That is what the plaintiffs below seek, and that is
what the court below held they could not secure, except in
New York.    Some of the courts which declined to take
jurisdiction seemed alarmed at the possibility of confu-
sion if every state in which the insurance company did
business should entertain suits to construe and enforce its
policies.    It seems to us, however, that it would be easier
for the far-away litigants to have that matter handled at
their homes, rather than take a trip to New York and
hire a lawyer there for the same purpose.    A citizen who
takes    a   policy   in   Tennessee   in   a   New   York   company,
after the company had agreed that service of process in Ten-
nessee might be made upon the insurance commissioner
of that state, has reason to believe that he or his benefi-
ciaries, if the company fails to treat them rightfully, will
have a ready resort to the courts of Tennessee for redress.
It is not necessary to take the view that, in order to con-
strue and enforce a policy, there must be an interference
with the internal management of the company.    The inter-
nal management will go on as before, and there will be no
interference with the constitution and by-laws or with the
lawful authority of the officers of the corporation.    In con-
struing a policy, it is not necessary to interfere with the
proper discretion of the officers.    Where there is discre-
tion, the officers will be allowed full range.    It is only where
there is no discretion, and the act is clearly unauthorized
and wrong, that the law will interfere.    In the cases to
which we have referred, one in North Carolina, one in Min-
nesota, and one in California, it was necessary to construe
the policy in connection with what the company had done,
as shown by the insurance reports of New York.    But the
matter was entirely simple.    There was no attempt to en-
trench upon the rights or the authority of the officers.

What they did was plain, and the law was plain, and there was no reason why the court of that state where the policy holder lived and the insurance was written and the contract made should not take jurisdiction of the suits that resulted. If all this applies to the courts of the states, much more does it apply to the courts of the United States. The judgment is reversed and the cause remanded for further proceedings."

The *Strauss* case, 54 L. R. A. 605, the *Ebert* case, 83 N. W. 506, and the *Benjamin* case, 79 Pac. 517, are all of interest in this controversy at bar, for the reason that each of those cases holds that the exaction of an illegal assessment by the insurance association was a violation of the contract, and that is the principle which is the basis of the present suit, to wit: that the exaction of illegal assessments by the Hartford Life Insurance Company was a violation of its contract with Mr. Frick.

As to the further contention of appel-
4. INSURANCE: life lant that the courts of Iowa would have no
insurance : judg-
ment against      way of enforcing such decrees, we shall not
foreign com-
panies : enforce-  assume in advance that defendant will not
ment.
comply with any decree that may be entered. It is, of course, possible that the decree could not be enforced by contempt proceedings against the officers of the defendant company in another state. But the plaintiff's rights will be fixed, and he may pay or tender the assessments in the amount fixed by the court; and, when the policies mature at his death, the questions as to enforcing payment may be then litigated, at least as to any questions not adjudicated in this case. On this question, the Supreme Court of Massachusetts, in *Wilson v. Martin-Wilson Automatic Fire-Alarm Co.*, 20 N. E. 318, says:

"It does not appear that the defendant will refuse to perform any decree which the court may make, or that the means which the court possesses of enforcing its decrees

will not be adequate if it does refuse. For the purpose of collecting a debt this corporation must be considered as having its residence in this commonwealth, and the letters patent are within its control. . . . It is the duty of the corporation to perform any decree the court may make in the suit, because the corporation is subject to the jurisdiction of the court. As the court has jurisdiction of both the person of the defendant and of the subject, it is no reason for dismissing the bill that the defendant may possibly avoid performing the final decree. This may happen in every personal suit when the property of the defendant is such that it cannot be seized and put into the custody of officers of the law. It is premature now to consider all the remedies which the plaintiff may have, if he obtains a decree, and the defendant refuses to perform it. *Pingree v. Coffin,* 12 Gray 288, 305; *Pierce v. Society,* 145 Mass. 56, 63 (12 N. E. 858)."

5. INSURANCE: life insurance: non-resident companies: liabilities and duties: extent.

Section 1639 of the Code, before quoted, provides that foreign corporations shall be subject to all the liabilities, etc., imposed upon domestic corporations. As to the construction of such a statute, the rule is stated thus, in 19 Cyc. 1331:

"When the statutes of the domestic state impose on foreign corporations coming within the state, and having usual places of business therein, the general statutes relating to domestic corporations, the same remedies which are available to domestic citizens against domestic corporations are available against them, and they may be sued in the domestic state in like manner as domestic corporations may" (citing *National Bank of Commerce v. Huntington,* 129 Mass. 444).

With reference to this statute, this court, in the case of *Nelson v. Nederland Life Ins. Co.,* 110 Iowa 600, 604, said:

"Whether the policy is a New York contract or not, the laws of this state relating to procedure control. 'Foreign insurance companies are not compelled to do business in this state. If they voluntarily choose to do so, however, they must submit to such conditions and restrictions as the legislature may see fit to impose.'"

In the case of *American Fidelity Co. v. Bleakley*, 157 Iowa 442, the court said (see page 446):

"The state has the undoubted right to say whether foreign corporations shall be permitted to do business here at all, and if such permission is granted, it may be upon such terms as the state shall prescribe. And, where it is the manifest intention to limit or restrict the powers given to such corporation by its charter, courts have no authority to override such legislation on the ground of comity between the states. Within its power, the state, through its legislature, is supreme, and the court's duty is ended when it determines what the statutory law is."

Section 1635 of the Code provides:

"In proceedings by or against a corporation   *   *   * the court may, upon motion   *   *   * upon cause shown for that purpose, compel the officers or agents of the corporation to produce the books and records of the corporation."

Code Section 4654 provides:

"The district   *   *   * court may   *   *   * by rule, require the production of any papers or books which are material to the just determination of any cause pending before it."

Section 4656, Code, provides:

"On failure to obey the rule or show sufficient cause therefor, the same consequences shall ensue as if the party had failed to appear and testify when subpoenaed by the [other] party."

Code Sections 4667 and 4668 provide that, on a failure

of the party subpoenaed to appear and testify, "the court may order his pleading to be taken as true."

Had the court, in the instant case, made an order for the production of books and records of the defendant to take the accounting, upon failure of defendant to obey such order, the petition of the plaintiff would be taken as correct. By standing on its demurrer, which the court had overruled, defendant put itself in the same position, and we see no reason why the court could not also proceed to hear evidence offered by plaintiff and enter a decree in accordance with the prayer of the petition, and fix the amount of plaintiff's damage. Appellee does not contend that no accounting was necessary as between the defendant and this plaintiff to arrive at the amount of the money judgment, but that the court was able to take the accounting itself, from evidence furnished from other sources than an accounting by the defendant.

6. TRIAL: reception of evidence: books of foreign corporations: failure to produce.

Without prolonging the opinion by a further analysis of the cases, it is our conclusion that the district court had jurisdiction of the person and of the subject-matter, and had jurisdiction to render the judgment and enter the decree. Some other questions are argued, but we think they are not raised by the demurrer.

The judgment of the district court is therefore— *Affirmed.*

DEEMER, WEAVER and EVANS, JJ., concur.