Robinson, J.
The plaintiff in error seeks a reversal of the judgment of the court of appeals and the court of common pleas upon three grounds:
1. That exclusive jurisdiction over the subject-matter of these actions lies with the Connecticut courts, and the exercise of jurisdiction by the Ohio courts violates the rights of plaintiff in error under the Fourteenth Amendment to the Constitution of the United States.
2. That' the defendant in error voluntarily paid his assessments over a long period of years without any duress or fraud intervening, and after notice of the right claimed by plaintiff in error, and cannot recover payments so voluntarily made.
3. That the claims of defendant in error are barred by the six-year limitation, under Section *422 11222, General Code, or by the ten-year limitation, under Section 11227, General Code.
These grounds of reversal will be considered in the order above. ' <
The jurisdiction exercised by the trial court will be considered in the light of the relief granted rather than in the light of the relief sought in the petition, and this court will confine itself to the question whether the jurisdiction of the court extends to the limit it was exercised.
The journal entry in the court of common pleas recites: “It is, therefore, considered and decreed by the court that the plaintiff, Alonzo J. Douds, recover of the defendant, The Hartford Life Insurance Company, the sum of $1857.15, together with interest thereon at the rate of six per cent, from the first day of September, 1919, and his costs herein expended, including a fee of $250 hereby allowed to the said referee, and in all taxed at $......” That court rendered no other judgment, order or decree in the cause.
It will not be possible within the reasonable limits of this opinion to discuss all the cases cited. We will, therefore, confine this discussion to those cases exactly in point and relied upon by counsel.
The plaintiff in error relies largely upon the case of Sauerbrunn, Jr., v. Hartford Life Ins. Co., 220 N. Y., 363, decided by the court of last resort of the state of New York, and upon the case of State, ex rel. Hartford Life Ins. Co., v. Shain, Judge, decided by the supreme court of the state of Missouri and reported in volume 245, Missouri reports, at page 78, and the authorities in those cases cited.
*423 In the Sauerbrunn case the facts covered and relief prayed for were not substantially different from the facts covered and relief prayed for in this case, and the action was disposed of by the cburt on a demurrer to the petition, the court there holding that “An action against a foreign life insurance company brought by a member of the company holding one of its certificates to restrain it from' making an assessment against him of more than a certain amount named in his certificate and to compel it to account for moneys theretofore paid by him in excess of that amount relates to the internal affairs of the company, which are conducted at its home office, and its method of assessment against members for the various purposes for which they are liable is governed by local laws and regulations and should be adjusted in an action brought in the home state of the company.” In the discussion of the case the court assumed that an account could not be stated between Sauerbrunn and the insurance company without an exhaustive visitation and examination of the books of the company in a foreign state; and the authorities there cited, in so far as we have examined them, were based upon that theory, and upon the further theory that the court would be unable to enforce any order which it might make in the premises and therefore ought not to do a vain thing.
In the Shain case the action was one in prohibition against the trial court prohibiting it from exercising jurisdiction to enjoin a foreign insurance corporation from assessing one of its policy-holders a rate of assessment in excess of the stipulated rate, *424 and for an accounting of such foreign corporation’s business affairs; and the court there, too, assumed that an accounting would involve a visitation and examination of the books of the insurance company at its home office in a foreign state. In each case the jurisdiction of the court to render a money judgment was considered in connection with the injunc-tive relief sought.
If the developments of the hearing before the referee in the case at bar did not refute the assumption that a determination of the issues in this case required an exhaustive visitation and examination of the books of the company, and if the judgment in this case operated to regulate the discretion and internal management of the affairs of the company, we would feel constrained to follow the reasoning and conclusion of the courts in those cases and the authorities there cited. But in the case at bar the referee was able to and did make an accounting between the plaintiff in error and the defendant in error upon the contract of insurance and the assessment calls issued to the defendant in error by the plaintiff in error, and upon the printed ratio for each such call and the rule for determining such ratio issued by the secretary of the plaintiff in error and supplied by a former general agent of the company; and but for the fact that the defendant in error had not preserved all such assessment calls, no other or further data would have been required by the referee in making the computation of the account. The defendant in error, however, having lost or destroyed a portion of the assessment calls, was obliged, as to a considerable number thereof, to *425 supply other proof, which was done by introducing in evidence parts of the public report of the insurance commissioner of the state of Connecticut showing the data, from which together with the assessment calls it became a mere matter of mathematical calculation, and the trial court, treating the action as one for an accounting and the recovery of money wrongfully obtained under color of the contract, made an accounting and rendered judgment against the plaintiff in error for the amount so found to have -been demanded and paid in excess of the amount authorized by the contract. While it is true that in such computation the trial court was obliged to assume the correctness of the statements of the plaintiff in error as to the number of death claims, and the amount of insurance in force, and to make no accounting as to the earnings of the million-dollar safety fund, except as those earnings may or may not have been taken into consideration by the plaintiff in error in arriving at the ratio by it fixed, the defendant in error is not complaining of the inadequacy of the relief, and we see no prejudice therein against the plaintiff in error, for it may be assumed, in the absence of a showing to the contrary, that the plaintiff in error did not understate the number of death claims or overstate the amount of insurance in force, nor overstate the earnings of the million-dollar fund, and the fact, if it be a fact, that the relief granted to the defendant in error was not full and complete, is no ground for disturbing the judgment upon the complaint of the plaintiff in error.
*426 To adopt the contention of the plaintiff in error that the enforcement of the terms of this contract between this defendant in error and this plaintiff in error in respect to the table or rates per thousand therein provided would affect thousands of other policy-holders distributed over many states, and would be an interference with the internal management of the affairs of the corporation, in that it would require the plaintiff in error to increase the assessment upon others of its policy-holders to meet its death claims, would amount to declaring that the courts of this state would not have jurisdiction to enforce payment upon a death claim, for necessarily a judgment in favor of the validity of such claim would result in an increase of the assessment upon its other policy-holders, within the limitations of their contract, by such proportion as the judgment would bear to the whole sum to be raised by such assessment. If the courts of the state of the domicile of the insured have no jurisdiction to determine the obligation of the insured as to the payment of assessments levied under the contract, they would have no jurisdiction to determine the obligation of the insurer as to the payment of death benefits thereunder.
If we adopt the theory of the plaintiff in error that under the contract, notwithstanding the table of rates expressly made a part thereof, it may make any assessment in excess of such rate necessary to pay the death claims accruing under the safety fund department of the company, it will logically follow that the rate may be increased as the number of outstanding policies decreases until the point is reached *427 where there is but one'assessable policy outstanding, which may be assessed the full amount of the death claims then existing, and when that policy-holder dies there shall be paid from the million-dollar safety fund the amount of such policy less certain specified items of expense, and the balance of the safety fund, amounting to approximately $999,000, will become the absolute property of the plaintiff in error, and while the disposition of the safety fund is not before this court at this time, and probably never can be before the courts of this state, yet in arriving at a construction of the contract within the jurisdiction of this court, the effect of any proposed construction concededly without its jurisdiction is a proper subject for consideration in so far as it has a bearing upon the contract within its jurisdiction.
To the argument that an affirmance of the judgment of the court below and the application of the construction of the contract there given to every policy-holder will result in the company being unable to make payment of the death claims as they accrue, we answer that we are concerned with and are here determining the rights of the parties hereto under the contract they entered into, and beyond that the judgment below does not go.
In holding that the plaintiff in error in making assessments is bound by the table of rates stipulated in the policy, and cannot above the age of sixty years levy an assessment at a rate in excess of $2.68 under the contract in question, we are following the case of Dresser v. Hartford Life Insurance Co., *428 80 Conn., 681, decided by the supreme court of the state of the domicile of the plaintiff in error.
The statutes of Ohio require any foreign insurance company, association or partnership desiring to transact business by an agent in this state to file with the superintendent of insurance a written instrument duly signed authorizing any of its agents in Ohio to acknowledge service of process therein for and in behalf of the company, consenting that service of process, mesne or final, upon any agent, shall be as valid as if served upon the company; consenting that suit may be brought against it in the county where the application for insurance was taken; if suit be brought against it after it ceases to do business in this state, and there is no agent of the company in the county in which it is brought upon whom service of process can be made, that service may be had by the sheriff sending a copy by mail. If it was not intended by the legislature to authorize suits upon the contracts of foreign corporations made with citizens of the state of Ohio, and if it was not contemplated by the plaintiff in error in accepting the condition imposed by such statute, and in filing its consent to such service, to bestow upon the courts of Ohio jurisdiction to enforce for the citizens of Ohio the terms of its contracts of insurance made with Ohio citizens and to render a judgment for money due Upon such contract, or wrongfully obtained under color of such contract, then the provisions of the statute in that respect operate as an aid to imposition upon the citizens of Ohio.
*429 We are not disposed to attempt to extend the jurisdiction of the courts of the state beyond its border, but when its jurisdiction may be exercised within the borders of the state in enforcing the contracts of its citizens with foreign corporations, based upon the written contract and written data furnished, pursuant to sudi contract, we are of opinion that to deily such jurisdiction would be in violation of the provision of the Ohio constitution that “All courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.” And it seems especially important in this case that the courts of Ohio should exercise such jurisdiction, in view of the fact that the supreme court of the state of Connecticut, the domicile of the plaintiff in error, in the case of Dresser v. Hartford Life Ins. Co., supra, in construing a contract of insurance between the plaintiff in error here and one Dresser, which contract in all essentials was like unto the contract here under consideration, held: “That the company could not increase the amount of the mortality calls above the amounts stated in the application for insurance made a part of the certificate,” notwithstanding which decision by the highest court of the state of its domicile, rendered in 1908, prior to the levying of many of the assessments here in controversy, the plaintiff in error, in disregard of such decision, has placed upon the contract an interpretation which permits it to do the very thing that court declared it could not do. Since the plaintiff in error has so *430 lightly regarded the judgment of the courts of its own state in this respect, its contention that it ought not to respond to the process of a court other than the courts of Connecticut does not appeal to the conscience of this court, and if adopted will be adopted because no other course can be justified under the powers conferred upon this court by the Constitution of Ohio, or because the exercise of such power will violate some provision of the Federal Constitution.
In the case of Frick v. Hartford Life Ins. Co., decided by the supreme court of Iowa, 179 Iowa, 149, in an action like unto the one at bar, and upon a similar policy, that court held: “A court of equity of this state, on proper service or appearance, has, in an action by an individual policy holder, jurisdiction, not only of a foreign non-mutual life insurance company, but jurisdiction: (a) to enjoin assessments on a policy of insurance in violation of the contract terms thereof; (b) to determine the amount of assessments illegally exacted (whether such determination be called an ‘accounting’ or not) ; and (c) to render personal judgment for the amount of such illegal exaction, provided such determination involves (1) no interference with the internal management of the affairs of the company, and (2) no interference zvith the discretionary powers of its officers. So held where the contract amount of an assessment involved no exercise of discretion on the part of the officers, but was determinable by mathematical calculation only.”
Upon the second proposition, that defendant in error voluntarily paid his assessments over a long *431 period of years without protest, if we adopt the theory of the plaintiff in error that it was a mere conduit through which' the various members of the Safety Fund Department insured each other, and that its function and liability were limited to the taking care of the safety fund, keeping account of the number of policies in force and the number and amount of death claims, and the issuing of calls for assessments and the disbursing of those assessments, clearly every dollar it received upon such assessments authorized by the contract, less the sums specified for expenses, it received in trust, and .the excess payments, having been made upon an assessment call made under color of the contract, in the absence of a showing to the contrary, will be presumed to have been made by the insured with reference to the contract and not as voluntary contributions to either the insurance company or the death benefit fund; for the fact, must not be lost sight of that the ratio, and rule under which the ratio was determined, were not furnished to the defendant in error, but to' an agent of the company, and there is no showing that defendant in error had knowledge of either prior to-, and such knowledge being exclusively within the company, except as it promulgated it by circular or otherwise to its agents, no presumption obtains against the defendant in error with reference thereto. If then the payments were exacted under color of the provisions of the contract and without acquainting the defendant in error with the fact that they were in excess of the assessments in the contract provided, or without acquainting him with the data from *432 which he could ascertain that they were so in excess, and the courts below so found, we can discover no reason for disturbing the finding, of the referee and the courts below that they were not voluntary payments.
Sums received, authorized by the contract, were received by the company as trustee for the payment of the proportion of death benefits owing by the defendant in error. ;
The sums received by the company in excess of the sums required by the contract having been exacted and received by it in violation of its duty, and under color of the trust created by the contract, equity will impress a trust upon such fund; and so long as the duties of the trustee under the contract, to apply such assessments to the payment of death benefits according to the table of rates included in the contract,, remain undischarged, the relation of trustee and cestui que trust continues, against which the statute of limitations will not begin to run until there is a' repudiation by the trustee of his obligation thereunder, or knowledge is brought to the insured that such sums have not been so applied. The trial court having found that the payments were made by the defendant in error without knowledge of the fact that they were in excess of the rate prescribed in the contract, it necessarily follows that the defendant in error could not have known that the trustee was in fact distributing such sums contrary to the provisions of the contract, and such distribution would not, therefore, amount to notice to him of the fact that the plaintiff in error had repudiated its obligation to distribute it according *433 to the terms of the contract, and, until such notice were brought to the defendant in error, the trust would continue and subsist, and would be within the saving provision of Section 11236, General Code.

Judgment affirmed.

Johnson, Hough, Wanamaker and Matthias, JJ., concur.